The Chief Justice delivered the opinion of the court.
Upon consideration of the facts contained in the state of the case agreed on by the parties in this cause, and submitted to us without argument, we are of opinion,
*462 1. In the first place, that when James Moore, one of the sons and devisees of Thomas Moore, attained the age of twenty-one years, and at the time of his decease, on the 29th of Oeto*390] her, 1809, *he was, under the will of the said Thomas Moore, entitled to one moiety of the premises in question, in fee simple, and Lydia Moore, his mother, and the widow of the testator, was entitled to the other moiety in fee simple.
By his will, Thomas Moore devised as follows , “ It is my further will, if they [his executors] shall think it most for the advantage of my estate, to dispose of the remainder of my real estate; [therein including the premises in question] they are hereby fully impowered to sell and convey the same, or otherwise,' as they may see best, together with the remainder of my personal estate, the profits or money arising from which, to be applied to the support of my wife and children, until they, my children, respectively arrive at the age of twenty-one years, when the overplus or remainder to be equally divided between my said wife and children, namely, James, John and Thomas Moore, or the survivors.” John and Thomas died under age and without issue. Lydia, their mother, and James who attained the age of twenty-one years, were the survivors between whom the remainder was to be equally divided; and under the language of the will, and our statute of the 26th of August, 1784, Dev. Laws 60, they took in fee simple.
2. In the second place. Upon the decease of James Moore on the 29th of October, 1809, his moiety of the premises in question, descended to Hannah Hance, then Hannah Burton, one of the lessors of the plaintiff. James Moore left no brother or sister of the whole blood. Hannah was his sister of the half blood, by the same mother but different fathers. The real estate came to.James by devise from his father. Upon the construction of the 3d section of the act of the 24th May, 1780, adopted and sanctioned by the Court of Appeals in the case of Arnold v. Den, 2 South. 862, the descent was cast on Hannah. Sarah, her half sister by their father Burton, had no blood in common with James Moore.
*463 3. In tlie third place. On the 17th February, 1815, on the decease of Lydia Moore, then Lydia Burton, her moiety if unaffected by the deeds of conveyance hereafter to bo mentioned, descended to Hannah Burton, who was then her only living issue.
4. In the fourth place. The deeds from John Taylor and Charles Burton and Lydia his wife, late Lydia Moore, executors of Thomas Moore, deceased, to John 0. Abbot, of 22d December, *1812, and of the 23d December, 1812, [*391 from John 0, Abbott to Charles Burton and Lydia his wife, did not against Hannah ITance, convey to or vest in the said Burton and wife any estate in the one moiety of the premises in question which had descended to her.
These deeds were a fictitious, not a real transaction. The parties have agreed and stated, that the deed-was made to John C. Abbot, not because he had purchased the premises, but because the executors could not make a deed to themselves, and it was necessary that the deed should be made by them to some other person, in order that' a title might be made to some of the executors named in the deed; that he acted merely as a friend and not as a purchaser; that he never saw the promises and never took possession or exercised any act of ownership; that the deed he made to Burton and wife was made in consequence of the original understanding and agreement at the time the deed was made to him and in order to carry into effect the said understanding and agreement; and that no money passed at the execution thereof, nor did he ever receive any, but acted therein altogether at the request of Charles Burton, and to answer the law as was said; that Charles Burton could not make a deed to himself and therefore it was necessary the deed should be made to some other person.
Such a transaction is, as to Hannah Hance a legal fraud. The law has wisely forbidden executors and trustees from acting in the double capacity of sellers and purchasers, and more especially under circumstances like the present, where *464 no public sale was made, but the executors, consulting only themselves, fixed the time, the place and the price of sale. The case of Arrowsmith v. Van Harlingen, Coxe 26; Winans v. Brookfield, 2 South. 847; and especially Den v. Wright, 2 Halst. 175, decided in this court, are to be taken to have settled the doctrine here, and render superfluous a labored examination. When I say the transaction is a legal fraud, I use the term in its technical sense; forbidden and destroyed by the law, but not necessarily involving moral turpitude. The term when brought into use was perhaps unhappily selected; and although now well understood by jurists, often strikes with almost withering force, the ear of a man who may have supposed, as for ought that appears in the facts before us, Burton may have done, that in what is *392] thus condemned, he was *doing an honest and judicious act. I make this explanation in justice to the memory of Charles Burton.
5. In the fifth place. The case exhibits no acquiescence or act of ratification on the part of Hannah Iiance, whereby the transfer through Abbott to Burton'may be sustained or she be precluded from impeaching it. She was an infant when the transaction took place and remained so until a very short time, not more than four months, prior to the commencement of the present action of ejectment. And here I take occasion to observe, that the expression used by the court in Den v. Wright, that such sales and conveyances are void, is, in my opinion, too strong. They are I think voidable, not void. They may be avoided by the cestui que trusts and their heirs; from whose acquiescence or ratification they may even as to themselves become valid. Strangers or third persons cannot impeach or question them.
6. In the sixth place. The deeds just mentioned conveyed to Charles Burton and Lydia his wife a legal and valid title to the other moiety of the premises in question.
Of that moiety, she was the real owner. The transaction was little more than discharging the premises of the power *465 of sale vested in the executors and enlarging the estate of her husband ; all which she had a legal right to effect, if she thought proper, and acted voluntarily and without being the subject of imposition or actual fraud, of which the case contains no hint or suggestion. In her lifetime, she could not be permitted to repudiate these deeds, nor can the lessor of the plaintiff claiming as her heir and in her right. This doctrine is in principle, recognized in The Lessee of Lazarus v. Bryson, 3 Binney 54.
7. In the seventh place. The lessors of the plaintiff may avail themselves of the objection to the validity of these deeds in the present action of ejectment and are not obliged in order to impugn them to resort to the Court of Chancery. Whatever opinions may have been elsewhere entertained or expressed, I consider this position as settled here, by the cases already cited, of which Den v. Wright, is directly in point. The same doctrine has been, as I am satisfactorily informed, acted upon in divers instances in the circuit courts; and when we recollect with what equal and unsparing force and certainty fraud invalidates at law as well as in equity, little reason will be found to question its correctness. The difficulty in a court of law is in general rather to [*393 prove the requisite facts, than to administer relief when they are established. The searching operation, on the conscience of the actors, of a proceeding in Chancery, is oftentimes necessary to bring out the truth; but when it can be ascertained by the ordinary modes of proof, resort to that court is not indispensable.
8. In the eighth place. The defendant, although a purchaser, from the executors of Burton, for a valuable consideration, is chargeable with notice of the legal fraud, and stands, therefore, on no more firm ground than Burton would have done. The title of the premises in his hands is as liable to be impugned as if in the hands of Burton. A purchaser with notice is in no better situation than the person from whom he derives his title, and is bound by the same *466 equity. Hughes v. Edwards, 9 Wheat. 499. The safety of one who purchases without notice and in good faith from a fraudulent purchaser, does not extend in this case to the defendant. He is presumed conusant of the deeds under which he claims. Sugden Vend. & Purch. 544; Lessee of Willis v. Bucher, 2 Binn. 466. The deeds from Burton and wife and Taylor to Abbott and from Abbott to Burton and wife, bore date on successive days, and were for the same amount of consideration money. A sale and conveyance on the very next day after the purchase, is, in the country, out of the ordinary sphere of hasty speculation, an unusual occurrence; still more so, if for the same price, and yet more, if to the very same person from whom the purchase was made. Would not such facts awaken suspicion in the most unthinking confidence? How if these facts are not in themselves presumptive evidence of legal fraud, yet they are such as should have excited attention and have put the defendant upon enquiry. Information sufficient to put a party on enquiry, is constructive notice, or notice in law. Sterry v. Arden, 1 John. C. R. 267. Green v. Slater, 4 John. C. R. 46. Hiern v. Mill, 13 Vez. 120. In Livingston v. Maryland Ins. Co. 7 Cranch, 547, it was said, “ A party shall be taken to have notice of all facts of which he has the means of knowledge in his own possession or is put directly upon enquiry by reference to documents submitted to his inspection.” In Dexter v. Harris, 2 Mason, 536, Story, Justice, said, “The doctrine upon this subject as to purchasers is, that they are affected with constructive *394] notice of all that is apparent upon the *face of the title deeds under which they claim, and of such other facts as those' already known, necessarily put them upon enquiry for and 'as such enquiry pursued with ordinary diligence and prudence would bring to their knowledge.”
8. In the eighth place. The question of notice is cognizable here. This follows as a corollary from the jurisdiction of this court over the matter of fraud. 1 Burr. 474; 10 John. 462.
*467 In conclusion, upon tho facts contained in the stato of the case, the plaintiff is entitled to recover one moiety of the premises in question.
Judgment accordingly.