65 | 388
127 | 232
65 | 388
145 | 548
65 | 388
161 | 434
65 | 388
174 | 514
65 | 388
27 SC | 431
27 SC | 432
65 | 388
212 | 95

## Fahrney *versus* Holsinger.

1. A devise was "I give to my son Daniel and my daughter Susanna the balance of my farm at $55 per acre;" the testator directed that the proceeds of all his estate should be equally divided amongst his children, so that those who had more than their share in their bequests should pay over to two other daughters named such sum as would equalize their shares, so that all his children should "get share and share alike." By a codicil it was ordered "that if my daughter Susanna die without heirs then the part bequeathed to her shall fall to Daniel at the same rate as in the will, and be equally divided between those of my other children or their heirs and representatives then living, to be paid as the payments are directed in my will." *Held*, 1. That the devise was a fee to Daniel and Susanna. 2. That heirs in the codicil meant issue. 3. That the contingency of death without issue was confined to the testator's lifetime.

2. The charge of $55 per acre made the devise a fee without reference to the Act of April 8th 1833, ? 9.

3. The nature of the devise over has always been considered in determining whether a definite or indefinite failure of issue was intended.

4. The devise over was to take effect in Daniel's life, for he was to do a personal act, viz., pay for Susanna's share, so as to be divided amongst the other children, &c., then living.

5. When a testator indicates that all his children shall take equally, in cases of doubt the will shall be so construed as not to disappoint this primary and paramount intention.

6. Susanna having survived the testator, the provision in the codicil did not come into operation and she took an absolute fee simple under the devise.

7. Taylor *v.* Taylor, 13 P. F. Smith 481, recognised.

May 10th 1870. Before THOMPSON, C. J, AGNEW and SHARSWOOD, JJ.

Error to the Court of Common Pleas of *Franklin county* : No. 88, to May Term 1870.

On the 1st of April 1870 an amicable action of covenant was entered, in which Susanna Holsinger was plaintiff, and D. D. Fahrney defendant; and on the same day a case stated was filed in the action, in which the following facts were agreed to :—

On the 15th of December 1852 Jacob Holsinger died, leaving his wife Elizabeth and five children, viz., Daniel, Jacob, Elizabeth, Christina, and Susanna the plaintiff in this action. At his death he was seised of a tract of land which, by his will, dated December 1847, he disposed of as follows :—

"Item 2. I give and bequeath to my son, Daniel Holsinger, and daughter Susanna Holsinger, the balance of my mansion farm at the rate of $55 per acre."

"Item 3. I give, &c., to my wife, Elizabeth Holsinger, the possession of my mansion-house and necessary privileges around the same, with all whatsoever it contains, &c., during her natural life, and my son Daniel and daughter Susanna shall give her yearly fifteen bushels of good wheat, and one hundred and fifty pounds of pork, and the same quantity of good beef; they shall also keep one cow well fed for her use during her lifetime, and

[Fahrney *v.* Holsinger.]

also furnish her a sufficiency of good wood, together with the foregoing item to pay her the sum of $80 in cash annually; and for a compensation for what Daniel and Susanna pay their mother annually, they shall retain in hand out of the estate the sum of $2000, without paying interest thereof during her life or within three months thereafter; and my son Jacob also shall pay her the sum of $24 in cash annually, for which he also shall retain in hand the sum of $400, without interest during her life or within three months after her decease."

"Item 4.   After my decease, as soon as it can be advantageously done, all my real and personal estate shall be sold, and the proceeds of the same, if any left, shall be equally divided among all my children, and when the amount of my whole estate will be ascertained, it shall be divided into five equal shares in order to find out the amount of one share, so that those of my children that have more than their share in the property bequeathed to them shall pay over to my daughter Elizabeth, intermarried with Dr. Jacob Fahrney, and to my daughter Christina, intermarried with Isaac Deardorf, such amounts as will equal their shares with the others, so that all my children will get share and share alike. But my daughters Elizabeth and Christina shall not receive anything until one year after my decease, then they shall receive one-half of their portion, and the other half in two years after my decease." * * *

At the time the said will was written the said testator was seised and possessed of other property, real and personal, not disposed of by devise or bequest to any particular person, but left to be sold at his death, and the proceeds divided among the children of said testator, share and share alike.

By a codicil to this will, made March 16th 1850, the testator provided:—

"And lastly my express will and desire is, and I do hereby order that if my daughter Susanna should die without heirs, then the part or share bequeathed to her in my mansion farm shall fall to my son Daniel, at the same rate per acre that is named in my will, and equally divided, share and share alike, between those of my other children, or their legal heirs or representatives then living, and to be paid in the same manner as the payments are directed to be made in my aforesaid will.   And further, if either my son Daniel or my daughter Susanna should have a desire to sell or dispose of his or her share in the said mansion farm, then and in that case to avoid any difference or dispute, &c., to sell one to the other, and in case they could not agree in the price thereof, then in order that no suit, &c., shall be brought, &c., the same shall be referred wholly to the award of two of their esteemed and qualified neighbors, each one to choose one, with power for them to choose an umpire, and what the said arbitrators shall

[Fahrney *v.* Holsinger.]

order, &c., shall be binding and conclusive, to and on both concerned."

Elizabeth Holsinger, the widow, died August 7th 1854. Daniel and Susanna have held the said mansion farm as tenants in common under the devise of said will. Susanna has never been married. Wishing to sell and dispose of her share in said mansion farm, she offered it to her brother Daniel, in compliance with the expressed wish and desire of her father in his will, but Daniel having refused, and still refusing to buy the same on any terms, she conveyed her interest in said farm so as to bar any supposed entailment, and had a reconveyance made to her.

On the 2d of March 1870, Susanna entered into articles of agreement with D. D. Fahrney, the defendant, for the sale of her undivided half of said farm to him, whereby he, the said defendant, agreed to purchase the said share or interest of said Susanna in said mansion farm. The plaintiff is willing and ready to execute a conveyance of the same to him, but said defendant refuses to accept said conveyance and pay the purchase-money therefor, and suggests that it is doubtful whether she took an absolute, indefeasible estate in fee simple in her share under said will, or whether she has now such an estate under said will and conveyances.

The question submitted to the court is, " Did Susanna Holsinger take an absolute and indefeasible estate in fee simple in her share under said will, or has she now such an estate under said will and conveyances ?"

If the court decide in the affirmative, then judgment to be entered for the plaintiff, damages to be assessed by counsel; if in the negative, judgment to be entered for the defendant.

The court (King, P. J., delivering the opinion) entered judgment for the plaintiff.

This was assigned for error by the defendant on the removal of the case to the Supreme Court.

*J. W. Douglas*, for plaintiff in error.—The power given to the executors to sell was a conversion, and vested the title in them : Act of February 24th 1834, § 13, Pamph. L. 35, Purd. 282, pl. 62 ; Chew *v.* Nicklin, 9 Wright 87. " Heirs" in the codicil is not used in the legal sense : Mitchell *v.* Sidebotham, Douglass 734 ; Johnson *v.* Currin, 10 Barr 500. The failure of heirs was definite : Smith on Ex. Interests 301 ; Turner *v.* Fowler, 10 Watts 325 ; Taylor *v.* Taylor, 13 P. F. Smith 481.

*Clarke & Garver*, for defendant in error.—The intention of the testator which is to govern must be the legal intention : Johnson *v.* Morton, 10 Barr 245. The words show that he intended an absolute disposition : Schriver *v.* Meyer, 7 Harris 87 ; Wood *v.* Hills, Id. 513 ; Shinn *v.* Holmes, 1 Casey 142. The word " heirs"

[Fahrney v. Holsinger.]

must mean "heirs of the body," the devise over being to the
brother, she could not die without heirs generally whilst he lived:
Braden v. Cannon, 12 Harris 168; Wall v. Maguire, Id. 248;
Covert v. Robinson, 10 Wright 274; Shutt v. Rambo, 7 P. F.
Smith 149. Does the limitation over on Susanna's dying without
issue change the fee simple into a fee tail ? Eichelberger v. Barnitz,
9 Watts 450; Vaughan v. Dickes, 8 Harris 509; Criley v. Cham-
berlain, 6 Casey 161; Curran v. McMeen, 5 P. F. Smith 487.
A power to dispose is inconsistent with an executory devise: Jack-
son v. Bull, 10 Johns. R. 19 ; Jackson v. Robbins, 16 Id. 537.    The
dying without issue is intended in the life of the testator: Cald-
well v. Skilton, 1 Harris 152; Clayton v. Lowe, 5 Barn. & Ald.
636 ; Fulton v. Fulton, 2 Grant 28 ; Mary Biddle's Estate, 4
Casey 59 ; Schoonmaker v. Stockton, 1 Wright 461.

The opinion of the court was delivered, July 7th 1870, by
SHARSWOOD, J.—There can be no question that the devise of
the balance of the mansion farm to Daniel and Susanna, vested
in them an estate in fee simple: "unless it appear by a devise
over or by words of limitation or otherwise in the will that the
testator intended to devise a less estate." Such is the provision
of the ninth section of the Act of April 8th 1833, Pamph. L.
250. Even, however, without the aid of that provision, the ex-
press charge of a sum in gross to be paid by the devisees as here
the rate of fifty-five dollars an acre makes it a fee without other
words: 2 Jarman 171; Burkart v. Bucher, 2 Binn. 455; Lo-
bach's Case, 6 Watts 171.

We think it very clear that the clause directing all the real and
personal property to be sold and the proceeds divided, does not
comprehend those parts of the estate before specifically devised.
The devises to Jacob and to Daniel and Susanna were valued by
the testator, and in the provision for distribution of the proceeds
of sale he directs that they shall be so divided that those of his
children that had more than their share in the property bequeathed
to them in the will should pay to those who had not, namely, Eliza-
beth and Christina, such amounts as will equal their shares with
the others so that all the children should get share and share alike.
We may dismiss altogether the argument that the entire estate by
this absolute direction to sell was converted into personalty, though
what operation that would have upon the construction of the parts
of the will now in controversy has not been explained, and it is
not easy to see.

What effect then ought the words of the codicil to have upon
the absolute estate in fee simple given to Susanna by the will ?
It seems to be conceded that by the words "if my daughter Su-
sanna should die without heirs," the testator did not intend heirs
in the general and technical sense; because her share in the farm

is then to fall to her brother Daniel, and certainly as long as he was living, or indeed any of his heirs, she could not die without heirs. Indeed if the devise over were to a stranger it would have been void: for as a remainder it would have been a fee mounted upon a fee, and as an executory devise bad because contrary to the rule against perpetuities.

The word heirs then must be restricted to "heirs of the body, issue or children." There is nothing to confine it to children, so that if Susanna should die without children, but leaving grandchildren or remote descendants, they should be cut off. It must therefore mean heirs of the body or issue. It does not seem to matter which, as both must have the same meaning.

There are then three theories of construction presented. The first maintains that by a dying without heirs an indefinite failure of issue was provided for, and that the consequence is to reduce Susanna's estate in fee devised by the will to an estate tail, according to the principle of Eichelberger *v.* Barnitz, 9 Watts 447. But the reasons against such a construction seem to be very cogent. The nature of the devise over has always been considered in determining whether a definite or an indefinite failure of issue was intended. The devise over in this instance was to take effect in Daniel's lifetime, for he was to do a personal act, namely, he was to pay or be charged for the share of Susanna in that event at the rate of fifty-five dollars an acre: and this sum was to be divided equally between the testator's other children or their legal heirs or representatives then living. It is impossible to conceive that the testator could have contemplated in this devise over an indefinite failure of issue at any period however remote: when the heirs or legal representatives of Daniel were to pay fifty-five dollars per acre for the land to be divided among the heirs or legal representatives of his other children. Had he intended it, it would undoubtedly be void as an executory devise, and to prevent that result the courts in such cases vest an estate tail in the first taker. But if it is clear that the testator had no eye to such a remote period, the construction of an indefinite failure of issue must be rejected. Mr. Smith in his Original View of Executory Interests p. 559, after stating that where on failure of issue the property is devised in trust for payment of debts, the failure shall not be construed as indefinite, gives this as the reason: "because it could not be supposed that the testator would provide for the payment of debts on an indefinite failure of issue, which might not happen for two or three hundred years." In Doe d. Smith *v.* Webber, 1 B. & Ald. 713, there was a devise to M. H. and her heirs for ever; and in case M. H. shall happen to die and leave no child or children, then to I. B. and her heirs for ever, paying the sum of £1000 to the executor or executors of M. H. or to such person as M. H. by her will shall appoint. Lord Ellenborough held that the words

[Fahrney v. Holsinger.]

" child or children," were here synonymous with issue, and that the devise over took effect when M. H. died leaving no issue living at her death.   He said that it was like the case of Roe v. Jeffrey, 7 T. R. 589, which was a devise to J. F. and to his heirs for ever, but in case J. F. should depart this life and leave no issue, then the testator devised over an estate for life only.   Falling within the same principle is the recent case of Taylor v. Taylor, 13 P. F. Smith 481, decided by this court, in which it was held that a devise over to the testator's executors to sell and divide the proceeds after a failure of issue of the first taker indicated clearly that the testator intended a definite failure of issue.

The second theory of construction is, that this being an ultimate devise to Daniel in fee upon a definite failure of issue, Susanna's estate in fee was subject to this executory devise over upon that contingency : an executory devise which she could neither bar nor destroy.   But while it is impossible to admit that the testator could have contemplated an indefinite failure of issue, the difficulty is not much less of construing the devise over to have reference to the death of Susanna.   That might be deferred until many years after his estate was settled.   He contemplated that this might be in a short time : he directed that it should be as soon after his decease as it could be done advantageously. Let us suppose that Susanna now, at the expiration of eighteen years from the death of the testator, should die without issue. Daniel and Susanna have paid or been charged in the settlement of their father's estate for the mansion-farm at the rate of fifty-five dollars an acre.   All the other real and personal estate of the testator has been sold, and the proceeds divided in the manner directed in the will.   Then Daniel is to pay fifty-five dollars an acre for Susanna's share of the farm to the executors or administrator de bonis non, and this sum is to be divided, share and share alike, between his other children or their legal heirs and representatives, and to be paid in the same manner as the payments are directed to be made in the will.   These payments were to be made so that those of the children that had more than their share in the property bequeathed to them, should pay over to Elizabeth and Christina such amounts as should make them equal. If he referred this division to the death of Susanna at any period, why does he do more than provide for its equal division ? If he considered the price fixed as the fair value of the land, why was Daniel excluded from his share of the amount ?   On the other hand, if its value might be very much enhanced, what reason is there to think that he intended for him so considerable an advantage over the others ?   When a testator indicates, as this one has most unmistakeably, that all his children shall take what he leaves, share and share alike, it is the duty of the court, in a case of doubt, to put such a construction on the will as will not

[Fahrney *v.* Holsinger.]

disappoint this the primary and paramount purpose. Let it be added to all this, that the clause which follows this provision of the codicil which directs that if either Daniel or Susanna should desire to sell or dispose of his or her share, the other should have a pre-emption right at a price to be fixed by referees mutually chosen, is very significant of his opinion that each of them would have a vested estate in fee capable of such sale and disposition.

We are driven, then, to adopt the third construction contended for, which is, that by the codicil he intended to provide only for the contingency of the death of Susanna without issue in his lifetime. · This satisfies all the words of the codicil, and is consistent with the whole scheme of the will. The valuation-money of the entire farm falling to Daniel was in that event to form a part of his whole estate, and Daniel was to be charged and make such payments as would render all the shares of the children equal, just as Jacob was for the valued part devised to him. Thus, the words of the codicil requiring the valuation to be paid in the same manner as the payments are directed to be made in the will are fully satisfied. It is not an immaterial circumstance that the codicil was an after-thought; the will was complete without it. The testator thought only to provide for a contingency which might occur in the case of Susanna—but which, perhaps, was not so likely to occur in the case of the other children—her death without issue before him or before the period of distribution should arrive. Mr. Jarman remarks that "sometimes, where an estate in fee is followed by apparently inconsistent limitations, the whole has been reconciled by reading the latter disposition as applying exclusively to the event of the prior devisee in fee dying in the testator's lifetime, the intention being, it is considered, to provide a substituted devise in the case of lapse:" 1 Jarman 419; and there are many cases in our own and other reports, in which, under similar circumstances, the same principle has been adopted : Doe *v.* Sparrow, 13 East 359 ; Clayton *v.* Lowe, 5 B. & Ald. 636 ; Caldwell *v.* Skilton, 1 Harris 153 ; Mary Biddle's Estate, 4 Casey 59; Schoonmaker *v.* Stockton, 1 Wright 461; Shutt *v.* Rambo, 7 P. F. Smith 149.

The result of the whole then is, that Susanna having survived the testator, the provision of the codicil never came into play, and that she is vested by the will with an absolute and indefeasible estate in fee simple.

Judgment affirmed.