CRAWFORD v. FOREST OIL CO.[1]

(Circuit Court, W. D. Pennsylvania. June 26, 1896.)

No. 8.

WILL—CONSTRUCTION.

    A devise "to my son M., and to his children," vests in M. only a life estate, and in his children living at the testator's death an estate in remainder, which will open to let in after-born children of M.

Knox & Reed and J. H. Beal, for plaintiff.
H. A. Miller, R. W. Cummins, and Boyd Crumrine, for defendant.

BUFFINGTON, District Judge. This is an action of ejectment, brought by Oliver P. Crawford, a citizen and resident of the state of Nevada, against the Forest Oil Company, a corporation created by the state of Pennsylvania, to recover an undivided one-thirteenth interest in a tract of land containing 105 acres and 83½ perches, and situate in Mount Pleasant township, Washington county, Pa. By stipulation dated April 13, 1896, trial by jury was waived. Having heard the proofs, the court makes the following findings of fact:

(1) The parties to this suit, their residence, and the subject-matter of the action are as stated above. The interest sought to be thereby recovered exceeds $2,000 in value. The defendant corporation was in possession of the land for oil and gas purposes when suit was brought.

(2) William Crawford, the grandfather of the plaintiff, was the owner in fee of the land involved in this suit, and, being seised

---

[1] Affirmed in 77 Fed. 106.

thereof, made his will, dated February 27, 1843, and died in 1846. His will was duly admitted to probate by the register of Washington county, Pa., and a copy thereof, marked "Exhibit A," is attached hereto, and made part of these findings. By said will he devised the premises in dispute as follows:

"I will and devise to my son Matthew and to his children my old farm adjoining Mark Kelso and others, provided, however, at the end of one year after my decease, or when called upon for it, he shall pay to his mother the sum of three hundred dollars, in addition to the sum as above bequeathed her; and he shall pay also to my son Oliver's child, when it shall become of age, the sum of two hundred dollars; but, if the said child shall die before it shall become of age, I will that he be altogether exonerated from the payment of the said two hundred dollars."

(3) That said Matthew Crawford, the devisee named, had, at the time his father executed said will, seven living children, of whom the plaintiff was one. After the making of said will, and before the death of William Crawford, the testator, another child was born to said Matthew, and after the death of the testator five other children were born to Matthew. Matthew Crawford died September 30, 1894, leaving to survive him twelve of said children and the children of his son, James Crawford, who died about 1890.

(4) Matthew Crawford on December 4, 1890, in consideration of $500 in cash, a royalty of one-eighth the oil, and $600 for each gas well utilized, executed to T. J. Vandergrift a lease for oil and gas purposes of land which included the premises in dispute. A copy of said lease, marked "Exhibit B," is hereto attached, and made part of these findings. This lease was duly assigned by T. J. Vandergrift to the Woodland Oil Company, which company, on March 20, 1892, entered upon said premises, drilled several wells, and obtained oil in paying quantities. On November 27, 1894, the Woodland Company sold and transferred the lease and wells to the Forest Oil Company, the defendant, which company has since held and claimed exclusive possession of the land occupied in operating the wells under the lease. During the lifetime of Matthew Crawford, the royalty arising under the lease was paid to him.

The controversy in this case turns on the proper construction of the clause of the will recited above. The plaintiff contends that by it his father, Matthew Crawford, took a life estate in the farm; that a remainder vested in the plaintiff and his brothers and sisters then living, and that this remainder opened to let in after-born children; that his father, having but a life estate, had no authority to grant a lease which would bind those in remainder; and that the exclusive right of possession is in the plaintiff and the other children of Matthew Crawford, and has been since his death. The defendants contend that Matthew Crawford took an estate in fee simple under the will, or such an estate as justified him in giving the lease he did, and the defendant is now holding the property under it.

What estate did Matthew take under the clause in question? The devise is, "to my son Matthew and to his children." He had six children living when the will was drawn, and seven when the testator died. Therefore the term thus used, "his children," as aptly

described persons in whom the devise could vest as though they were mentioned by the testator nominatim. Had the devise been "to my son Matthew and to his children (Martha, Nancy, Eliza, James, William, Oliver, and Mary)," beyond doubt the words "his children" would be held words of purchase, and these persons would take a vested estate in remainder, not immediately, and by virtue of their relationship to their father as his children, but directly as devisees of the testator. Do they take otherwise when they are simply specified as "his children" without name? In law the word "children" has and has had a well-defined meaning, which is found to run through the text-books and reports, and upon the proper adherence to which meaning the stability and very existence of many titles in this commonwealth depend. Defining it from a positive standpoint, it is a word of personal description, it points to individual acquisition, and, so far as designation goes, it differs in no way from a mention of individuals by name. Defining it negatively, it is not a word of limitation; it does not point to heritable succession. It is employed in contradistinction to the terms "issue" and "heirs of the body." These are used in the creation of estates tail, and point to a contingent hereditable succession, while the term "children" is one of personal description and individual acquisition. Such definitions of the word are recognized in a long line of cases, and the term itself has grown to be a technical one, so to speak, in the land law of the commonwealth. See Guthrie's Appeal, 37 Pa. St. 14; Affolter v. May, 115 Pa. St. 58, 8 Atl. 20; Huber's Appeal, 80 Pa. St. 348; Oyster v. Oyster, 100 Pa. St. 538. The natural import of the term is that of one who takes by purchase, and primarily it must be so regarded. Applying these principles of interpretation and construction to the will of William Crawford, we are justified in assuming primarily and presumptively that the clause in question vested an estate in remainder in the children of Matthew Crawford, and that they took as purchasers. The defendant denies to the word its ordinary meaning, and contends it was not so used by the testator. In so doing he must assume the burden of showing cogent and convincing reason to justify this departure from the ordinary and presumptively correct meaning of the word. Hayes, Estates Tail, p. 35; or, as Guthrie's Appeal, supra, says:

"Admitting now that the word 'children' may be construed to mean 'heirs of the body,' yet there must be an express warrant of this change of its legitimate meaning, under the hand of the author of the gift. The intention to use it as a word of limitation, contrary to its natural import, must be rendered clear by the words of the grantor or testator himself."

The word "children" has acquired a technical meaning in devises, and, unless from other inconsistent words it is clear some different definite sense was given it by the testator, this technical meaning should be adhered to. Carroll v. Burns, 108 Pa. St. 386. That this recognized meaning has been departed from in adjudged cases is certain, but in such cases there was substantial reasons for so doing. "There are many instances in our state," says the court in Oyster v. Oyster, supra, "when 'children' has been held to be a

word of limitation, but in all of them such construction was clearly in accord with the intent of the testator as gathered from the four corners of the will, as when 'children' has been used with 'heirs of the body' or 'issue' as its synonyms."

Approaching the inquiry before us in the light of these firmly-rooted canons of construction, we ask, what reason has the testator given in his will for a departure from the meaning which the law had firmly fastened on the words he used? The devising clause now in question is in itself complete, independent, and self-explanatory. It is not necessarily connected with or dependent upon other portions of the will, either for interpretation, certainty, or devising efficacy. The devise thus having an inherent completeness, a construction which would ingraft upon it meanings and changes based on other and wholly disconnected clauses and subjects is strained and unnatural. But a reference to other parts of the will shows no such use of words or terms as compels the substitution of the word "heirs" or "issue" for "children" in the clause in question. Clearly, the word "heir," in the concluding part of the will, was used in the broad sense of embracing all beneficiaries, and as this included his widow and the children of his daughter Margaret, as well as testator's own children, the term "heirs" was not there used as synonymous with children. So, also, the word "issue," in the devise to James, Robert, and Thomas, was not used interchangeably and as synonymous with "children," but was broad enough to cover lineal descendants other than children as well.

It is suggested, however, that the fact that Matthew's devise was coupled with the condition to pay certain legacies would vest in him a fee. We cannot assent to this. Such a contention fails to appreciate the reason and spirit of the rule which resorts to legacies to determine the quantum of the estate devised. The fact of legacies accompanying a devise is only pertinent when the estate devised is undefined, and therefore uncertain. 2 Jarm. Wills, *269; Hinkle's Appeal, 116 Pa. St. 498, 9 Atl. 938; Dixon v. Ramage, 2 Watts & S. 144; Burkart v. Bucher, 2 Bin. 464. Here, however, there is no need to resort to legacies to determine the quantum of estate. By the use of the term "children" the testator vested an estate in remainder in a specified class of persons, and a precedent life estate in Matthew, their father. There is no uncertainty in either respect. If he added the payment of legacies on the estate devised to the first taker, it was simply a burden on such first taker, not an extinction of the estate of those in remainder.

In conclusion, then, we are of opinion Matthew Crawford took a life estate in the land in question; that his children living at the testator's death took an estate in remainder, which, under the authority of Hague v. Hague, 161 Pa. St. 646, 29 Atl. 261, and Gernet v. Lynn, 31 Pa. St. 94, opened to let in after-born children.

In accordance with these views we reach our conclusions of law:

1. The court is of opinion that under the will of William Crawford his son Matthew took an estate for life in the land in question.

2. That by the will of William Crawford, the plaintiff Oliver P.

Crawford, one of the children of Matthew, took an estate in remainder in the undivided one-thirteenth of the land.

3. That said Oliver P. Crawford has shown title and right of possession to the undivided one-thirteenth part of the land in question, and is entitled to recover in this action.

In accordance, therefore, with our findings of law and fact, the court finds in favor of the plaintiff and against the defendant for the undivided one-thirteenth of the premises described in the writ, together with 6¼ cents damages and cost of suit; and judgment will be entered accordingly.