# McCullough *versus* Fenton *et al.*

1. A devise (in 1800) was, "to my sons John and Elijah all my real estate, that is to say, as soon as Elijah arrives at the age of twenty-two they shall have possession and not sooner." This created a fee.

2. The devisees were authorized to sell or divide, this necessarily implied a fee.

[McCullough v. Fenton.]

3. It was further provided that if either John or Elijah should die without lawful issue before coming into possession of the land, their respective shares were to be equally divided between Hannah, Priscilla and Martha, and " in case any one of the said John or Elijah should die aforesaid without issue, whichever of them may survive and live to the time of possession, is to receive an equal share with the three last-mentioned girls." *Held*, that the fee in John and Elijah was defeasible on the death of either without issue before Elijah reached twenty-two.

4. On the death of one of the sons without issue before they came into possession, the survivor with the daughters took a fee.

5. The will further provided, "if any * * * of Hannah, Priscilla or Martha should die without lawful issue or not being married, that then their share or shares should go to their next of kin in equal degree of the full blood." Elijah died without issue before twenty-two. *Held*, that his moiety vested in John, Hannah, Priscilla and Martha in fee.

6. A gift in remainder to the " next of kin" of Hannah, &c., was vested.

7. If Elijah had attained twenty-two or left lawful issue his fee would have been absolute and indefeasible.

8. The limitation over to his brother and sisters was not a remainder, but an alternative or substituted fee, to take effect upon his death without issue before twenty-two.

9. The devise to the "next of kin" of the daughters was an alternative or substituted limitation to vest only in case the first limitation did not take effect.

10. Where an absolute estate in fee simple is first limited and then upon the happening of some contingency another fee is substituted, a clause providing for the death of the substituted devisees or their death without issue, means only a further substitution to take effect at the period when the first substitution fails.

11. Caldwell v. Skilton, 1 Harris 152, recognised.

May 11th 1870.   Before THOMPSON, C. J., READ, AGNEW and SHARSWOOD, JJ.

Error to the Court of Common Pleas of *Cumberland county :* No. 26, to May Term 1870.

This was an action of ejectment for 75 acres of land, brought September 5th 1867, by Elizabeth Fenton, John E. Carson, Elizabeth R. Carson, Elisha Carson, William Carson, James McBeth and Jane his wife in her right, and James McElwaine and Alice his wife in her right, against James MCullough.

The parties claimed under John Carson, who died in 1800, seised of the land in controversy.   The decedent left four children, viz. : John, Elisha, Ruth and Hannah by one wife; and three, viz. : Priscilla, Elijah and Martha, by another wife.

The decedent left a will dated April 11th 1800, and proved May 6th.   The will amongst other things provided as follows :—

* * * " Next, I give and bequeath to my sons John Carson, Jr., and Elijah Carson, all my real estate as hereafter limited, that is to say, as soon as Elijah arrives at the age of twenty-two years, they shall have full possession and not sooner.   The rents and profits of said estate to go towards the keeping, maintaining and educating my younger children, to wit : Hannah, Priscilla, Martha and Elisha, if they or any of them should so long live.

[McCullough *v.* Fenton.]

I further order and direct that if my said two sons cannot agree in the division of said land, or agree to sell and divide the money, that in such case they shall choose five disinterested persons to value and divide the same, whose determination shall be final."

He gave to other children legacies amounting to £385, which he charged on the devise to John and Elijah, and proceeded :—

* * * "Further, it is my will that in case that John or Elijah, or either of them, should die without lawful issue before they come to the possession of the land by virtue of this my last will and testament, then in such case I order and direct that their respective shares of the land be equally divided between Hannah, Priscilla and Martha, or in case any one of them of the said John or Elijah should die aforesaid, without issue, then in such case it is my real intention that whichever of them may survive and live to the time of possession, is to receive an equal share with the three last-mentioned girls. And further, I order and direct if any of my daughters, to wit, Hannah, Priscilla or Martha should die without lawful issue or not being married, that then their share or shares should go to their next of kin in equal degree of the full blood."

Elijah Carson, the devisee, died in 1813, before he arrived at the age of 22 years; Martha died in 1815. On the 14th of April 1818, James Piper and four others made a report in partition, stating in it that they had been chosen for that purpose by the heirs of the decedent, agreeably to his will, and had divided a tract of 205 acres into equal parts of 102½ acres each, one, which includes the land in dispute, to John, at a valuation of $55 per acre and the other to Hannah and Priscilla at $50 per acre. On the 7th of May deeds of partition were made between John, and Hannah and Priscilla in accordance with the report; and on the 16th and 22d of May, John conveyed his part to John Dunbar whose title is vested in the defendant. John died in 1820, Ruth died in 1823. Elisha died in 1824, leaving seven children, the plaintiffs in this case; Jane McBeth and Alice McElwaine were married before 1834, Hannah died in 1844, and Priscilla on the 12th of November 1844 executed a deed to bar the estate tail in the land in dispute, and took a reconveyance on the 20th of the same month; she died in 1864. None of the children of John Carson the elder left issue but Elisha. The premises had been held in adverse, hostile and notorious possession by Dunbar and those claiming under him since the conveyance to him in 1818.

The question in the case was the construction of the devise of the testator's real estate.

Graham, P. J., charged :— * * *

"The facts in this case are not disputed, and it is admitted by the respective counsel that the questions presented are questions

[McCullough v. Fenton.]

of law for the court, there being no disputed facts to submit to the jury.

"The plaintiff's counsel contend that under the devise in the will of John Carson, Sr., his son John took at most but an estate in tail. In this we do not concur. Although there is no word of inheritance used by the testator in the devise to his sons, John and Elijah, we think his intention is very clear, that he intended to give them a fee simple, particularly if they or either of them survived until the time they were to have possession, when Elijah should attain the age of 22 years. It is only in case that either John or Elijah should die without issue before they came to the possession of the land by virtue of testator's will, that the share of the deceased shall be divided between the surviving brother and Hannah, Priscilla and Martha. And although there are no words of inheritance used by testator, the land and the persons of the devisees are charged with the payment of legacies to their brothers and sisters, and it is a well settled principle that this will give the devisee a fee simple although there may be no words of inheritance. But the testator also authorizes the devisees to sell the land and divide the money. This is entirely inconsistent with the idea that he intended to give them less than a fee simple. Had Elijah attained the age of 22 years, and he and John sold the land and divided the money as the testator authorized them to do, the title of the purchaser could not have been doubted, that he would hold in fee simple, and it is difficult to suppose how the death of Elijah could reduce the estate of John from a fee simple to a fee tail. The one-fourth of Elijah's interest upon his death vested in John in fee simple, and one-fourth in Hannah, one-fourth in Priscilla and one-fourth in Martha in fee tail. [Upon the death of Martha, her fourth passed to Priscilla, her only surviving sister of the full blood. John then held five-eighths of the 205 acres in fee simple, Priscilla two-eighths, and Hannah one-eighth in fee tail.] This being the quantum of interest, and estate held by the respective tenants partition was made by five men under the direction of the will, and deeds executed by the respective parties as before stated. The land was divided into two equal parts each containing 102½ acres. The part conveyed by John was valued at $55 per acre, and the part conveyed by John to his two sisters, was valued at $50 per acre. A question is here presented as to validity of the partition made. Can tenants, one of whom holds an undivided interest in fee simple, and two who hold an undivided interest in fee tail make partition? This, we think, may be done where the interest of the heir in tail is not prejudiced or injured by the partition made. This would occur when the value of the respective parts corresponded with the respective interests of the tenants. This would not prejudice the heir in tail, for three-eighths in value

[McCullough v. Fenton.]

would remain subject to the entailment. But where less land in value, is assigned to the tenants in tail, than the value of their interest in the whole, and owelty of partition is paid to them, this would be clearly an injury to the heirs in tail, it would reduce the value of the estate in tail, it would be converting a part of it into money for the benefit of the tenants in tail, and would not be binding upon them. * * *

["We are therefore of opinion that their partition is of no validity against the heirs in tail.]

"But Priscilla Carson, in her lifetime, on the 12th November 1844, executed a deed under the Act of Assembly to bar her estate tail in the land in controversy. This deed, although it was executed many years after she had parted with her interest in the land, is valid and available to bar the estate tail, and will enure to the benefit of the vendees claiming under her, so that there can be no recovery as to the two-eighths of which she was tenant in tail.

"The only remaining interest is the one-eighth of Hannah, who died 4th April 1844. The suit was brought to November Term 1867, more than twenty-three years after her death. The land in controversy has been in the hostile, adverse and notorious possession of the vendee of John Carson, and those claiming under him since 1818, a period of forty-nine years. It has been occupied by residence and cultivation, by those claiming title, as farms are usually occupied. [The present plaintiffs had a right of entry at the death of Hannah Carson, more than twenty-three years before suit brought, and that right is now barred by the Statute of Limitations, and they cannot recover, except James McBeth and Jane his wife and James McElwaine and Alice his wife. They were at the death of Hannah Carson and still are married women. The statute does not run against them, and they are entitled to recover the two-sevenths of the eighth of 75 acres and 19 perches, described in the plaintiffs' statement."]

The verdict was for James McBeth and wife, and James McElwaine and wife, for the undivided two-sevenths of the one-eighth of the land in dispute.

The defendant took out a writ of error, and assigned for error the parts of the charge in brackets.

*A. B. Sharpe* and *J. McD. Sharpe*, for plaintiff in error.—The questions are, 1. The words in the devising clause. 2. The power to divide the land, or to sell and divide the money. 3. Charging the land with the payment of the pecuniary legacies.

1. Morrison v. Semple, 6 Binn. 98; Wilson v. Wilson, 2 Id. 20; Dice v. Sheffer, 3 W. & S. 419; Saylor v. Kocher, Id. 163; McClure v. Douthitt, 6 Barr 414; Culbertson v. Duly, 7 W. & S. 195; Peppard v. Deal, 9 Barr 140; McCullough v. Gilmore,

[McCullough v. Fenton.]

1 Jones 370; Foster v. Stewart, 6 Harris 23; Weidman v. Maish, 4 Harris 504; Schriver v. Meyer, 7 Harris 87; Wood v. Hills, 7 Harris 513; Shinn v. Holmes, 1 Casey 142; Holmes v. Pattison, Id. 484; Taylor v. Board of Health, 7 Id. 73; Hall v. Dickinson, 1 Grant 240; Estate of Mary Biddle, 4 Casey 59.

2. Morris v. Phaler, 1 Watts 389; Maskeyline v. Maskeyline, Amb. 750; Nannock v. Horton, 7 Ves. 392; Robinson v. Dusgole, 2 Vern. 161; Second Reformed Presbyterian Church v. Disbrow, 2 P. F. Smith 219; Grove's Estate, 8 Id. 429; Brown's Estate, 2 Wright 289; Barnett v. Deturk, 7 Id. 92; Watson v. Pearson, 2 Exch. 581.

3. Lobach's Case, 6 Watts 171; Hoover v. Hoover, 5 Barr 355; Burkart v. Bucher, 2 Binn. 464; Harden v. Hays, 9 Barr, 151; Coane v. Parmentier, 10 Barr 72; Fulton v. Moore, 1 Casey 468; Schoonmaker v. Stockton, 1 Wright 461; Stevens v. Snelling, 5 East 87; Sams v. Garlick, 14 M. & W. 698; Dalton v. Heweer, 6 Mad. 9; Doe v. Richards, 3 Term R. 356.

The rule that if a devise be made to one in fee, and "if he die without issue," or, "on failure of issue," or, "for want of issue," or "without leaving issue," then over to another in fee, the estate of the first taker is in tail, has no place when it appears from the will itself that the testator meant a failure of issue within a fixed period: Vaughan v. Dickes, 8 Harris 509.

The testator contemplated a definite failure: Cassell v. Cooke, 8 S. & R. 290; Purefoy v. Rogers, 2 Saund. 388; Tomkins v. Tomkins, cited in Goodtitle v. Whitby, 1 Burr. 234; Bramston v. Holyday, 1 W. Bl. 335; McCarthy v. Dawson, 1 Whart. 4; Beltzhoover v. Costen, 7 Barr 13; Jessup v. Smuck, 4 Harris 327; Langley v. Heald, 7 W. & S. 96; Caldwell v. Skilton, 1 Harris 152; Hawkins on Wills 136, 137; Toovey v. Bassett, 10 East 460; Caskey v. Brewer, 17 S. & R. 441; McCaskey v. Graff, 11 Harris 321; Braden v. Cannon, 12 Id. 168    The limitation over being on an indefinite failure, Hannah, Priscilla and Martha took an estate tail: Smith on Executory Interests 301; Findley v. Riddle, 3 Binney 139; Turner v. Fowler, 10 Watts 325; Langley v. Heald, 7 W. & S. 96; Taylor v. Taylor, 13 P. F. Smith 481; Smith's Executory Interests 538; Eichelberger v. Barnitz, 9 Watts 447; Eby v. Eby, 5 Barr 463; Covert v. Robinson, 10 Wright 274; Wynn v. Story, 2 Id. 166; Matlack v. Roberts, 4 P. F. Smith 148; Linn v. Alexander, 9 Id. 43. On Martha's death unmarried and without issue her share passed to Priscilla as a contingent remainder in fee: Heffner v. Knepper, 6 Watts 18; Lapsley v. Lapsley, 9 Barr 130; McIntyre v. Ramsey, 11 Harris 317; Ivins v. Scott, 2 Casey 215; Caskey v. Brewer, 17 S. & R. 441; Riehle's Appeal, 4 P. F. Smith 97; Johnson v. Curran, 10 Barr 498; Curran v. McMeen, 5 P. F.

Smith 487; Fetrow's Estate, 8 Id. 424; Walker *v.* Dunshee, 2 Wright 430.

*W. M. Penrose* and *Henderson & Hays*, for defendants in error. —Hannah took an estate tail: Eichelberger *v.* Barnitz, Braden *v.* Cannon, *supra;* Amelia Smith's Appeal, 11 Harris 9; Price *v.* Taylor, 4 Casey 95.

The opinion of the court was delivered, July 7th 1870, by

SHARSWOOD, J.—"Wills, and the construction of them," said Lord Coke, "do more perplex a man than any other learning; and to make a certain construction of them, this *excedit jurisprudentis artem:*" 2 Bulstr. 130; Lord Mansfield remarked once of a will before him: "It is plain that the testatrix at the time of making her will had legal assistance, but it was such assistance as served only to confound, by making her use all the drag-net words of conveyancing without knowing the force of them:" Doe *v.* Fyldes, Cowp. 834. Every judge and lawyer of experience when called on to interpret such wills, has felt, if he has not given utterance to the wish, that the testator had been allowed to express his meaning in his own simple inartificial language without any attempt to employ legal and technical phrases. Had that been done in the will before us, it is more than probable that there would have been no difficulty or complication in it.

It is our duty, however, to ascertain from the words in connection with the circumstances surrounding the testator what was his intention; for, when ascertained, that is to be carried into effect if it does not violate some established rule of policy or law. Though admitting this to be the first and cardinal canon of interpretation, we often lose sight of it in the vain endeavor to follow and conform to the decisions upon other wills where the language is similar. This is certainly a very laudable object; but we must not attain it at the expense of frustrating the lawful intention of the testator in the particular case. *Nullum simile quatuor pedibus currit.* No two wills are ever exactly alike; and we run no risk of introducing any novel precedent; for there is no construction, which may not be referred to some category, and will not have many fellows in company to keep it in countenance. We may mistake in the application of a principle; but that is not of much importance when the real justice of the cause between the parties is reached, because the decision can never be a precedent unless a case occur in which exactly the same words are used under the same surrounding circumstances; a contingency which may be styled *potentia remotissima,* and therefore not worthy to be regarded.

The learned judge below was undoubtedly right in holding that under the will of John Carson, his sons John and Elijah took a

fee simple. It was defeasible indeed upon the death of both or either without lawful issue before Elijah arrived at the age of twenty-two, at which time they were to have full possession and not sooner. The contingency was so clearly confined to that fixed period by the words of the will as to place it beyond any question. "All my real estate" were of themselves enough to convey the fee without the word heirs; in addition to which were the circumstances that they were to pay sums in gross, and were authorized either to sell or divide, which necessarily implied a fee. Nor can it be a question that the words by which upon the death without issue of John or Elijah before coming to the possession of the land, the share of either was to be divided equally between Hannah, Priscilla and Martha, and the survivor of the sons, conveyed to them the fee. "Their respective shares" are shares of the estate before devised, which as we have seen was a fee. We have therefore upon the limitations of the will thus far without serious difficulty, in the event which occurred, namely the death of Elijah before he arrived at the age of twenty-two, a vested estate in fee simple in John, Hannah, Priscilla and Martha. Then follows the clause which creates the difficulty and gives rise to this controversy: "And further I order and direct, if any of my daughters, to wit: Hannah, Priscilla or Martha, should die without lawful issue or not being married, that then their share or shares should go to their next of kin in equal degree of the full blood." When was this death without lawful issue or not being married in the contemplation of the testator to take place? It seems to have been assumed below on both sides that it meant either an indefinite failure of issue or a failure of issue living at the death of either of the daughters, whenever that might occur. In the former case the legal effect, according to numerous authorities to avoid the result, that as an executory devise it would be void for remoteness, is to reduce the estate of the first taker to an estate tail, with a vested remainder to the next of kin. I say a vested remainder because though a man can have no heirs while he is alive, as his heirs cannot be ascertained until his death, and therefore such a remainder is necessarily contingent, yet it is not so as to a gift or remainder to the next of kin; who are always capable of ascertainment during his life. Supposing this then to have been the true construction, the remainder as to Martha's share was a vested remainder in Priscilla, and as to Hannah's a vested remainder in John, Elijah and Ruth. These remainders were in fee; for here again the word 'share or shares' carried the estate in fee before given to the next of kin. This seems to have been lost sight of upon the construction adopted in the court below; for John's remainder upon Hannah's estate being a vested remainder in fee, certainly passed by his deed to John Dunbar, May 16th 1818. In the view we take of the case, however, this is now immaterial. It

must be admitted that there is nothing in the words employed to take the case out of the operation of the rule as settled in Eichelberger *v*. Barnitz, 9 Watts 447, Vaughan *v*. Dickes, 8 Harris 509, and Matlack *v*. Roberts, 4 P. F. Smith 148, so as to make the dying without issue to mean a definite failure of issue living at the death of either of the daughters, whenever that should take place.    As between these two constructions therefore the learned judge below was perfectly right in adopting the former one.   But there is another construction which was not suggested to him, and which, as it appears to us, fulfils more perfectly the real intention of the testator than either of these.

It is to be observed, that if Elijah had attained twenty-two or left lawful issue, his fee first given would have been absolute and indefeasible.   His brothers and sisters would have had no interest in his moiety.   The limitation to them was not a remainder, but an alternative or substituted fee, to take effect upon the contingency of his death without issue before that period.   It seems equally plain that the devise to the next of kin of the full blood of the daughters in the event of their death " without lawful issue or being married," was in like manner an alternative or substituted limitation to vest only in case the first limitation in fee did not take effect.   The whole is one simple and entire disposition, referred to the event of the death and failure of issue of Elijah at a fixed, definite period ; and there is no reason for distinguishing the one substitution from the other, but many against it.   We have seen that the limitation to the next of kin of the full blood is unquestionably in fee.   If the construction which reduces the estate of the daughters to an estate tail be adopted, then we have the original shares in tail, and the accrued shares in fee ; an anomaly which has been considered as inadmissible, and not within any reasonable construction of the intention.   "Besides," says Mr. Justice Bell, " that construction would make defeasible the original shares first taken under the will, while those which might accrue by the clause of survivorship would vest absolutely : a consequence certainly never contemplated :" Caldwell *v*. Skilton, 1 Harris 155. On the death of Martha, then, her share would vest in Priscilla in fee, while her own original share she would have held according to this construction in tail.   John's original moiety was undoubtedly in fee ; his fourth part of Elijah's moiety was also in fee, and so was his share of Hannah's interest upon her death as her next of kin of the whole blood, while Hannah's own original share would have been in tail.   What was the effect, or rather the want of effect, of the words " or not being married," is settled, I agree, in Vaughan *v*. Dickes, 8 Harris 509, and Matlack *v*. Roberts, 4 P. F. Smith 148, though for myself I concur in the doubt expressed by my brother Agnew in the latter case, if the question were *res integra*.   We must consider that these words will

not make the failure of issue definite. In that view the sentence is to be disencumbered of the marriage condition. If there was no marriage there could be no lawful issue, and as to the interest of husband and wife, it mattered not; for there is dower and curtesy of an estate tail as well as of a fee simple. But the rule is an established one to give effect to every word, when it can be done, and these words ought not to be rejected if they indicate that the intention of the testator was not an indefinite failure of issue or an estate tail, but a substituted or alternative fee. Now in this latter view they are important and very significant. If Hannah had died before Elijah, "being married," she would have left a husband, and it was not the intention of the testator to deprive him of his curtesy, or to deny to Hannah in that event the power to provide for him by will. These words were necessary in that case, though they would have been insignificant and useless had an indefinite failure of issue been contemplated. In Doe d. Everett v. Cooke, 7 East 269, the bequest was to B. and his assigns, and after his death then to his child or children by any future wife, but in case B. should die "an infant, unmarried and without issue," then over to C. and his children. B. attained majority, and died leaving a widow, but without issue: it was held that the gift over failed. Lord Ellenborough said: "Had he left a wife and had died an infant and no children, the testator might have intended that in such event the widow should be benefited by taking her share under the Statute of Distribution with the next of kin, or that B. should be able to make a testamentary disposition in her favor; meaning also that if he left children, they should have the estate in preference to the wife; and that if he left neither wife nor children at his death during his minority, C. and his children should have the estate; but that if he arrived at the age of twenty-one he should have power to dispose of it, though he left neither wife nor children." So in the case of Doe d. Baldwin v. Rawding, 2 B. & Ald. 441, where a testator devised his lands to his daughter, and any other children he might leave, and to her or their heirs and assigns for ever; but in case his daughter and such other children as aforesaid should die under the age of twenty-one years, unmarried and without lawful issue, then to his wife in fee. The daughter died under age and without issue, but leaving a husband surviving; and it was held on the authority of the last case, that the devise over failed, the word "unmarried" being construed "not having a husband at the time of her decease," by which effect was given to all branches of the contingency. These words show, then, that the testator had reference to a definite, fixed period of time; and that could only have been the event of the death of a daughter before taking her substituted estate upon the death of one or both his sons before Elijah arrived at twenty-two.

Nor are we without authority for thus holding. Indeed since Caldwell *v.* Skilton, 1 Harris 152 a (case which in all the conflict of opinions on this subject has never been denied or doubted, but on the contrary expressly approved in Jessup *v.* Smuck, 4 Harris 340), I think it may be laid down as a general rule, almost without an exception, that where an absolute estate in fee simple is first limited, and then upon the happening of some contingency another fee is substituted for it, a clause providing for the death of the substituted devisees or their death without issue, means only a further substitution to take effect at the period when the first substitution fails. I regard the case of Caldwell *v.* Skilton as identical with this case in the material provisions of the will, and an authority in point for the construction which I have sought to establish. There the testator gave to his wife all his estate real and personal during widowhood, after her decease or marriage whichever might first happen, to his children *nominatim*, their heirs and assigns for ever, as tenants in common. " And in case of the death of either of my said children, his or her share or purpart to descend to the children of said child, or if said child should die without issue born alive, then the said share to be divided among and be enjoyed by my children, their heirs and assigns for ever, share and share alike. as tenants in common." Here was first a limitation in fee to the children on the death or marriage of the wife, then in case of the death of a child, a substituted fee to his or her children—with another substitution in case there should be no issue born alive—to the survivors in fee. It was held that the death of a child without issue had exclusive reference to the period of the death or marriage of the widow, and that the children took estates in fee simple. " Congruity requires," says Mr. Justice Bell, " that the chance of survivorship among the children of the testator, and the possible event upon which the limitation over to their children might take effect, should be referred to the same determinate period; or, in other words, to let in the survivors on the death of any of their brothers or sisters without issue, the contingency must happen within the same definite time, when according to the settled rules of construction, the contingency implied from the words ' in case of the death of any of my children,' must occur to give place for the substitution of the grandchildren." Then, after quoting largely from Mr. Powell's Essay on Devises, he adds as the generalization derived from the discussion : " I have said that to harmonize this will and to give consistency to all its parts, we must refer the possible consummation of the second contingency as creative of an estate in the survivors to the same limit. Such a construction is not only called for by reasons springing from this particular testamentary instrument, but is justified by authoritative precedent. Now the ultimate gift to the survivors is made to depend upon an actual contingency. Where, say the

[McCullough v. Fenton.]

determinations, this is the case and there is nothing in the will to show the contingency of dying without children was meant to operate without limit during the life of the first taker, it is, as in the other instance, restricted to the death of the testator or within a given period after his decease.    Where the gift is immediate, the contingency is held determined by the first named event; where there is an intermediate estate, time may be given for the happening of the possibility during the running of the precedent interest. Examples and illustrations of this rule are afforded by Doe d. Lifford v. Sparrow, 13 East 359, which was a devise of realty: Jenour v. Jenour, 10 Ves. 562, and Gillard v. Leonard, 1 Swanst. 161, all of which are very like the instance in hand."    To which may be added Shutt v. Rambo, 7 P. F. Smith 149.    A testator devised to his daughter a farm "in fee," and gave other real estate in fee to other children : "should any of my children die without heirs, then the property hereby bequeathed to them shall revert to my estate."    It was held that the word "heirs" evidently meant "issue"—and though in consequence of the Act of April 27th 1855, Pamph. L. 368, it mattered not whether it was construed to be an estate tail or a fee—yet the evident preference of Chief Justice Thompson in the opinion pronounced was to the construction which referred the dying without issue to the death of any of the devisees in the lifetime of the testator.    He refers to Schoonmaker v. Stockton's Adm., 1 Wright 461, where under a similar limitation in case of a child dying unmarried or without issue, Chief Justice Lowrie said: "we suppose it was intended not to reduce or defeat any estate vested in enjoyment under the will, but to dispose of any that might fail to become thus vested by the death of a child before the testator or perhaps before actual distribution." And see Umstead & Reiff's Appeal, 10 P. F. Smith 365.    Under this interpretation of the will of John Carson, on the death of Elijah without issue before arriving at the age of twenty-two, his moiety of the estate vested in John, Hannah, Priscilla and Martha in fee simple.    Upon the death of Martha her share vested under the intestate laws in her sister of the whole blood, Priscilla.    The deed of partition and release of May 9th 1815, by Hannah and Priscilla conveyed their entire estate to John Carson, Jr., in fee which by deed May 16th 1818, he conveyed to John Dunbar in fee, from whom the title was regularly reduced to James McCullough, the defendant below, who was therefore entitled to the verdict.

Judgment reversed.