## JESSIE R. MORRISON v. SIMON TRUBY, JR.

APPEAL BY DEFENDANT FROM THE COURT OF COMMON PLEAS
OF ARMSTRONG COUNTY.

Argued October 14, 1891—Decided November 9, 1891.
[To be reported.]

1. It is a settled rule of construction that when a bequest of personalty is made absolutely in the first instance, and it is provided further that, in the event of the death, or death without issue, of the legatee, another legatee or legatees shall be substituted, such provision shall be taken to mean death, or death without issue, in the testator's lifetime.

2. Such being the rule as to personalty, when a clause containing such a provision applies to and blends together both realty and personalty, the inference is that, as to the realty, it was intended to be construed in accordance with said rule. No distinction in this respect, however, between devises of realty and bequests of personalty is recognized in this state.

(a) A testator, having devised realty to a son " during life, and after his death to his children and their heirs," and other realty to a daughter " and her heirs," and bequeathed personalty to each of said devisees, directed further that, if either should die without leaving issue living at the time of his or her death, all realty and personalty devised or bequeathed to the child so dying should go to the other absolutely:

3. The clause of the will relating to the death of either of the testator's children without issue, did not qualify the nature of the titles to realty previously devised to them, but had reference to the contingency of such death in the testator's lifetime. Having survived the testator, the daughter took an indefeasible estate in fee-simple in the realty devised to her.*

Before Paxson, C. J., Sterrett, Clark, Williams, McCollum and Mitchell, JJ.

No. 288 October Term 1891, Sup. Ct.; court below, No. 21 December Term 1891, C. P.

On September 11, 1891, an amicable action of assumpsit, between Jessie R. Morrison, plaintiff, and Simon Truby, Jr., defendant, was entered in the court below, the following agreed statement of facts being submitted for the opinion of the court, as if found by special verdict:

---

*Cf. Miller's Est., post, 561.

Case Stated.

"1. That Absalom Reynolds, deceased, was the husband of Mrs. Margaret Reynolds and the father of Harry Reynolds and Mrs. Jessie R. Morrison, the only persons named in testator's will as devisees of Absalom Reynolds deceased.

"2. That Absalom made and executed his last will and testament on the 31st March, 1877 ; duly admitted to probate on the 1st March, 1881.

"3. That said Absalom Reynolds died on or about the 26th February, 1881, testate as aforesaid.

"4. That, at the time of the making and execution of said last will and testament, the said testator was. seised in his demesne as of fee, inter alia, of, in, and to the said in-lot No. 44 in the borough of Kittanning, Pa., and that he died so seised of the said in-lot.

"5. That Harry Reynolds, Jessie Reynolds (Morrison), the only two children of testator, and Mrs Margaret Reynolds, the widow, survived the testator and are still in full life.

"6. That said Jessie Reynolds Morrison went into possession of said real estate devised to her under and by virtue of said will, including in-lot No. 44 aforesaid, and claims the same in fee-simple absolutely.

"7. That the said Jessie Reynolds Morrison, by contract dated the 24th August, 1891, she being then and now a widow and sui juris, sold the said in-lot No. 44 in the borough of Kittanning, Pa., to Simon Truby, Jr., for the sum of four thousand dollars, to be paid on the execution and delivery of a deed in compliance with the terms of the contract, and by said contract binding herself to assure the title in her to be in fee-simple, absolutely perfect in law and equity to convey such title to the purchaser.

"8. That said Jessie Reynolds Morrison, in compliance with the terms of the article on her part, did on the 7th September, 1891, make and execute a deed for the said in-lot No. 44, as required by her article, to said Simon Truby, Jr., and did on the said 7th September tender the same to him and make demand for the payment of the purchase money, which deed the said Simon Truby, Jr., this defendant, refused to accept, and refused to pay the purchase money.

"9. The said Simon Truby, Jr., admits that the deed as a deed is unobjectionable ; but avers and says that, under the will

of said Absalom Reynolds, deceased, here annexed, the said Jessie R. Morrison did not acquire a fee-simple title to the said in-lot, and cannot therefore make conveyance of the same as required and stipulated in said contract. Therefore, it is submitted that if the court finds the facts as submitted to be true, and does further find as a question of law that under the said last will and testament of said testator, the said plaintiff became vested at his death with a title in fee-simple, of, in, and to said in-lot No. 44, and is of the opinion that the deed aforesaid would and doth convey to and invest in said Simon Truby Jr., such title, then and in that case judgment to be entered in favor of the plaintiff, in the form of judgment upon a special verdict, for the sum of four thousand dollars with interest from the 7th September, 1891; and if the court should be of the contrary opinion, and that the law under all the facts is with the defendant, then judgment to be rendered in like manner for the defendant generally."

The material provisions of the will of Absalom Reynolds, above referred to, were as follows:

"Third: I give, devise and bequeath to my son Harry Reynolds, during his natural life, and after his death to his children and their heirs, the parts of in-lots numbered respectively one hundred and eleven (No. 111); one hundred and sixteen (No. 116); and one hundred and twenty-one (No. 121), situated in said borough, which I now own and upon which my tavern house and stabling are located, together with said tavern house, stabling and improvements; to have and to hold the same unto my said son Harry Reynolds during his natural life, and after his death to his children lawfully begotten and their heirs. Also I give and bequeath to my said son Harry Reynolds all the household and kitchen furniture and tavern furniture, dishes, carpets, oil-cloths, linen, plate and goods used in, for and in connection with and in carrying on said tavern or hotel, that may be in said tavern house and property at the time of my death. Also ten thousand dollars of the fifteen thousand dollars which I now have invested in United States bonds (being of those of which my said wife is to receive the interest during her lifetime), and all the interest that may at the time of the death of my said wife remain unpaid on said ten thousand dollars.

Case Stated.

"Fourth: I give, devise and bequeath to my daughter, Jessie Reynolds, and her heirs, those five several pieces of land situated in said Kittanning borough and known and designated respectively as out-lots numbered nine (No. 9), eight (No. 8), twelve (No. 12), thirteen (No. 13), and fifteen (No. 15), in the general plan of said borough. Also, that certain piece of land or lot of ground situated in Kittanning borough, and known and designated in the general plan of said borough as in-lot number forty-four (No. 44). Also, that certain piece of land adjoining said borough and situated in Valley township in said county, bounded . . . . . containing four acres, more or less. Also, I give and bequeath to my said daughter, Jessie Reynolds, twenty-six shares of the capital stock of the Kittanning Bridge Company. Also, thirty shares of the capital stock of the Kittanning Water Company. Also five thousand dollars of the fifteen thousand dollars which I now have invested in United States bonds (being of those of which my said wife is to receive the interest during her lifetime), and all the interest that may at the time of the death of my said wife remain unpaid on said five thousand dollars. Also fifteen thousand seven hundred dollars in cash."

"Sixth: As to all the rest, residue, and remainder of my property and estate which I may own or be entitled to at the time of my death, whether real, mixed or personal, or whatsoever kind and wheresoever situated, I do give, devise and bequeath·the same unto my children, Harry Reynolds and Jessie Reynolds, in fee-simple, share and share alike."

"Eighth: It is my will and I do order, direct, devise and bequeath that if either of my said children, Harry Reynolds or Jessie Reynolds, shall die without leaving lawful issue living at the time of his or her death, then, and in that event, all the real estate, personal property, money and property herein or hereby devised, given or bequeathed to the child so dying, shall go, pass to and become vested in the surviving child absolutely and in fee simple."

The plaintiff requested the court to find, as matters of law, inter alia :

1. That under the will of Absalom Reynolds the plaintiff, as daughter and devisee, became invested with title to the real estate mentioned in the fourth clause of the will, including in-lot No. 4 in the borough of Kittanning, Pa.

Arguments.

Answer: We so find.[1]

5. That under the said will, said plaintiff took and became invested with a title in fee-simple to all the lands devised to her under the fourth clause of the will.

Answer: We so find.[2]

6. That under all the facts of the case the law is with the plaintiff.

Answer: We so find.[3]

7. That judgment be rendered in favor of the plaintiff for the amount of the claim, with interest from the 7th September, 1891.

Answer: We so find.[4]

The defendant requested the court to find:

1. That, under the facts and law in this case, the plaintiff is not entitled to recover, and the judgment must be for the defendant.

Answer: And now, September 15, 1891, we find that the plaintiff is entitled to judgment, and the foregoing proposition is refused.[5]

—The court, RAYBURN, P. J., having entered judgment for the plaintiff for $4,005.33, the defendant took this appeal, assigning for error:

1–4. The answers to plaintiff's points.[1 to 4]

5. The answers to defendant's point.[5]

*Mr. M. F. Leason* (with him *Mr. J. H. Painter*), for the appellant:

The fourth and eighth clauses of the will are clearly contradictory and inconsistent; and, as the eighth clause cannot be considered mere verbiage having no mission to perform, it must, being later than the fourth, control and modify the devise made, limiting it to a life-estate: Sheetz's App., 82 Pa. 213. In determining the intention of a testator, the court may consider the value of the property devised or referred to in the will, the circumstances of the testator, his character, his family and the amount and character of his estate: Marshall's App., 2 Pa. 388; Postlethwaite's App., 68 Pa. 477. Absalom Reynolds left two children, to one of whom he gave, by the third clause of his will, the one half in value of his estate, for life; and to the other, by the fourth clause, the other one half in value, in fee-

simple.   The eighth clause seems to have been an after-thought.
He must have regarded it as his last act, an equalizing clause.
This intention is clearly demonstrated from the scheme of the
whole will.   While not a masterpiece of artistic workmanship,
its meaning is plain as to the testator's intention.

*Mr. James B. Neale* (with him *Mr. Ross Reynolds*), for the
appellee.

Counsel cited: Doebler's App., 64 Pa. 15; Fetrow's Est.,
58 Pa. 424; Marshall's App., 2 Pa. 388; Barr's Est., 2 Pa. 428;
Postlethwaite's App., 68 Pa. 477; Follweiler's App., 102 Pa.
581; Ivins's App., 106 Pa. 176; Caldwell v. Skilton, 13 Pa.
152; Miller's App., 113 Pa. 459; Smith's App., 23 Pa. 9;
Fulton v. Fulton, 2 Gr. 28; Fitzwater's App., 94 Pa. 141; Mc-
Cormick v. McElligott, 127 Pa. 230; Biddle's Est., 28 Pa. 59;
Rewalt v. Ulrich, 23 Pa. 388; Fahrney v. Holsinger, 65 Pa.
388; Mickley's App., 92 Pa. 514; Stevenson v. Fox, 125 Pa.
568.

OPINION, MR. JUSTICE CLARK:

Upon an examination of the will of Absalom Reynolds, de-
ceased, it will be observed that the testator, in the fourth clause
of his will, devised certain lots of ground, including the lot in
question, to his daughter Jessie in fee-simple.   The devise is
to her and her heirs; whereas, the devise of the hotel property
to. his son Harry, in the preceding clause, is for " his natural
life, and after his death to his children and their heirs."   After
providing for  his wife out of the personal estate, he gave to
each of his children certain personal property, money, stocks,
United States bonds, etc., and afterwards gave to them jointly
the rest and residue of his estate, real, personal, and mixed,
absolutely and in fee-simple.   In the eighth clause of his will,
however, he provides as follows:  ·

" It is my will and I do order, direct, devise, and bequeath,
that if either of my children, Harry Reynolds or Jessie Rey-
nolds, shall die without leaving lawful issue living at the time
of his or her death, then, and in that event, all the real estate,
personal property, money and property, herein or hereby de-
vised, given or bequeathed to the child so dying, shall go, pass

to, and become vested in the surviving child absolutely and in fee-simple."

It is contended by the appellant that these provisions are contradictory and inconsistent, and that the effect of the eighth clause is to limit the previous devise made to his daughter Jessie in the fourth, and that, in consequence, her estate is liable to be defeated at her death if she should die without leaving lawful issue, etc. The words lawful issue in the will prima facie mean heirs of the body, and are words of limitation. To die without lawful issue, in general imports an indefinite failure of issue. But this construction will yield to a contrary intent apparent on the face of the will : Taylor v. Taylor, 63 Pa. 481 ; Kleppner v. Laverty, 70 Pa. 70 ; Ingersoll's App., 86 Pa. 240. In this case, however, we do not understand the provision, "if either of my said children, Harry Reynolds or Jessie Reynolds, shall die without leaving lawful issue living at the time of his or her death," in the sense of a limitation ingrafted upon or qualifying the fee ; nor do we understand the testator to have meant death generally, or whenever it might happen, but death in the testator's lifetime; and upon this contingency the devise over to the survivor was intended to take effect by way of substitution. The writer of the will had a full knowledge of the legal meaning of the words employed ; and it is extremely improbable that, after conferring a fee in strictly accurate technical terms, he meant, in the eighth clause, to strike it down and reduce it to a life-estate merely.

It will be seen upon an examination of the eighth clause, that it applies not only to the real estate, but also to the personal property, stocks, bonds, money, etc., bequeathed to his son and daughter. The devises and bequests are blended in the provision that; upon the death of either his son or daughter, the whole should go to the survivor absolutely and in fee-simple. As to personal estate, the rule of construction in such cases is well settled. In Mickley's App., 92 Pa. 514, Mickley, the testator, bequeathed one sixth of his estate to one of his sons " or his heirs," and a like proportion in the same language to the two other sons, and the remaining three sixths in trust for each of his three daughters. He also directed : " If either of my sons should die without leaving issue living at the time

of his death, the share given to such son shall pass to and be
divided among such of my children as may be then living, and
to the issue of such as may be dead." It was held that each
son had an absolute, indefeasible interest in the share be-
queathed to him. The general rule was recognized that, if a
bequest be made to a person absolutely in the first instance,
and it is provided that in the event of death, or death without
issue, another legatee or legatees shall be substituted to the
share or legacy there given, it shall be construed to mean death
or death without issue before the death of the testator. To
the same effect are the following cases: Biddle's Est., 28 Pa.
59; Fitzwater's App., 94 Pa. 141; and Stevenson v. Fox, 125
Pa. 568.

We cannot believe that the testator intended the same words,
applied generally to both classes of property, to have a partic-
ular effect with respect to one class, and an entirely different
effect with respect to the other; for, having blended them in
this particular clause of the will, the undoubted inference is
that he intended this clause to be subject to the same construc-
tion as to both.

In Mickley's Appeal, supra, it is said by Chief Justice SHARS-
WOOD that, whilst in the English cases a distinction is made in
this respect between devises of realty and bequests of personalty,
no such distinction is recognized in this state. Indeed, Mick-
ley's Appeal is ruled upon the authority of Caldwell v. Skilton,
13 Pa. 152, which is a case arising upon a devise of realty. In
that case, a testator devised real estate to his wife during life
or widowhood, and at her decease or marriage, the estate to
descend to and be enjoyed by his children and their heirs and
assigns forever, as tenants in common; and in case of the death
of either of the said children, his or her share or purpart to
descend to the children of said child, or, if said child should
die without issue born alive, then the said share to be divided
among and be enjoyed by the surviving children, their heirs
and assigns forever. It was held that each of the children, on
the death of the testator, took an indefeasible estate in fee-
simple under said will; that, by the clause "in case of the death
of either of my said children," the testator did not mean death
generally, or whenever it might happen, but that he meant,
his wife having died during his lifetime, that the fee should

vest absolutely on his death, and that it was not defeasible throughout the entire life of the children. Mr. Justice BELL, upon a review of the authorities in the case last cited, concludes that, where there is nothing to indicate an adverse intent, additional limitations dependent upon no other contingency than is implied from the language "if any of them die " or "in case of death," cannot be referred to the event of death whenever it may happen, which would be to give an enforced signification to such words, but must be construed as referring to death in association with some additional circumstance which makes it actually contingent. That circumstance, it is said, is naturally in regard to the time of its happening; and that time, where the gift is immediate, is necessarily the death of the testator, there being no other period to which the death can be referred. Caldwell v. Skilton was afterwards approved in Jessup v. Smuck, 16 Pa. 340.

In Fulton v. Fulton, 2 Gr. 28, the words were: "If any of the above-named four children should die, it is my will that the share of such one be equally divided among the survivors;" and it was held that the death referred to was a death in the testator's lifetime, and that, as the four children survived him, their estates were absolute. In speaking of the effect of such a construction, this court said: "It avoids the fault of converting an express fee-simple estate into a life-estate, or an estate-tail by implication. It avoids the fault of seeming to give a fee-tail or a life-estate in personal property, both the realty and personalty being granted by the same words. It follows the rule that that construction ought to be favored which makes an estate vest absolutely at the earliest possible period." So, in Fahrney v. Holsinger, 65 Pa. 388, the words of the devise were, "I give to my son Daniel and my daughter Susanna the balance of my farm, at $55 per acre." By a codicil it was ordered that, "if my daughter Susanna die without heirs, then the part bequeathed to her shall fall to Daniel at the same rate as in the will," etc. It was held that the devise was a fee to Daniel and Susanna; that heirs, in the codicil, meant issue; and that the contingency of death without issue, under the whole scheme of the will, was confined to the testator's lifetime. To the same effect is McCullough v. Fenton, 65 Pa. 418, where it was held that a like alleged limitation over to the

brothers and sisters was not a remainder, but an alternative substitute fee, to take effect upon the death of the first taker without issue before the period of enjoyment. The case was decided upon the authority of Caldwell v. Skilton, supra, " which," Mr. Justice SHARSWOOD says, " in all the conflicts of opinion on this subject, has never been denied or doubted."

The text-writers recognize the same rule. " Sometimes," says Mr. Jarman, " where an estate in fee is followed by apparently inconsistent limitations, the whole has been reconciled by reading the latter disposition as applying to the event of the prior devisee in fee dying in the testator's lifetime; the intention being, it is considered, to provide a substitute devise in the case of lapse :" 1 Jarman on Wills, 478. We may refer, also, to Smith on Executory Interests, 559, and to the English cases of Doe v. Sparrow, 13 East 359, and Clayton v. Lowe, 5 B. & Ald. 636. Where the gift is immediate, that is to say, to take effect immediately upon the testator's death, it is determined by the first-named event : Fahrney v. Holsinger, supra; Fulton v. Fulton, supra; but, where there is an intermediate estate, or where a time is fixed for the enjoyment of the devise, time may be given for the happening of the possibility during the running of the precedent interest, or until the period of enjoyment arrives : Caldwell v. Skilton, supra; McCullough v. Fenton, supra. Thus, the actual contingency may happen in the lifetime of the testator, or of the first taker, or before distribution or the period of enjoyment, according to the intent of the testator as disclosed in the provisions of his will.

In this case, however, it is plain that, as the disposition was immediate, the death in contemplation was a death in the testator's lifetime. It follows that as Jessie, the daughter, survived the testator, her title is absolute and indefeasible.

The judgment is affirmed.