# Fitzwater's Appeal.

1. Where the intendment of a will is doubtful, the law leans in favor of an absolute estate ; of the primary rather than the secondary intent; of the first taker as the primary object of the testator's bounty ; and of a distribution conformable to the general rules of inheritance.

2. A testator devised and bequeathed his residuary estate in five parts, three of which were to be held in trust to pay the net income thereof to each of his three nephews for life; and at the death of either " then to pay the principal sum of the share of him so dying unto his children, should he leave any surviving him, * * * and provided, further, that should F., the son of my nephew J., *die without issue*, then I order and direct that the money coming to him out of my estate, at the death of his father, as hereinbefore provided, shall go to his uncles and aunt, on his father's side :" *Held*, that the words " die without issue," referred to the contingency of death without issue during the lifetime of J., the first taker, and that upon the death of J., F. was entitled to an absolute estate in J.'s share.

March 24th 1880.    Before SHARSWOOD, C. J., MERCUR, GOR-
DON, PAXSON, TRUNKEY, STERRETT and GREEN, JJ.

Appeal from the Orphans' Court of *Montgomery county:* Of
January Term 1878, No. 306.

Appeal of Frank Fitzwater from the decree of the court making
distribution in the estate of Jacob Fitzwater, deceased.

Jacob Fitzwater died in April 1876, leaving a will, which con-
tained the following provisions:

"All the rest, residue and remainder of my estate which may
remain at the death of my said wife, after the payment of the
before mentioned legacies, I give and bequeath as follows, to wit:

"The one-fifth part thereof I give and bequeath to my nephew,
George W. Fitzwater.

"One other fifth part thereof I give and bequeath to my
nephew, John Fitzwater, my executors, however, first deducting
thereout the sum of one thousand dollars which he owes to my
estate.

"One other fifth part thereof I give and bequeath to my
nephew, Charles Fitzwater.

"One other fifth part thereof I give and bequeath to my niece,
Charlotte Potter, the wife of Dr. Robert E. Potter.

"Of the other fifth part of said residue I direct my executors
herein named to pay to Frank Fitzwater, the son of my nephew,
Jacob Fitzwater, the sum of one thousand dollars.   The remainder
of said last mentioned fifth part of said residue, I give and
bequeath to my nephew, Jacob Fitzwater.

"Provided, however, and I do hereby order and direct that the
shares of the said residue of my estate hereinbefore given and
bequeathed to my said nephews, John Fitzwater, Charles Fitz-
water and Jacob Fitzwater respectively, shall be and remain in the
hands of my executors herein named, to be by them held upon the
following trusts and conditions, to wit, that my said executors
shall safely invest the same and collect the income and interest
thereof, and after payment of expenses incident to said trusts, pay
over the said income and interest as it shall become due unto my
said three nephews, John, Charles and Jacob respectively, for and
during the terms of their natural lives, and at the death of any or
either of them, then to pay the principal sum of the share of him
so dying unto his children, should he leave any surviving him, and
in case any or either of them, my said three nephews, shall die
leaving no child or children surviving him, then to pay the prin-
cipal sum of the said share of him so dying without child or chil-
dren, to his surviving brothers and sisters in equal shares, and to
the issue of any that may then be dead, such issue to take the
parent's share, had such parent then survived, and provided
further, that should the said Frank Fitzwater, son of my nephew,
Jacob Fitzwater, die without issue, then I order and direct that

the money coming to him out of my estate at the death of his father, as hereinbefore provided, shall go to his uncles and aunt on his father's side, or if any of them be dead, then to their issue, such issue taking their parent's share."

Mrs. Fitzwater, wife of the testator, died in March 1876. Jacob Fitzwater, nephew of the testator, died April 1877, before distribution, leaving Frank Fitzwater, his only son and child who is now living—married and having issue, one child—but who, at the time of the making of the said will, and at the time of the death of the said Jacob Fitzwater, Sr., was unmarried.

At the audit of the account of the executors, Frank claimed that the bequest of the one-fifth to him was absolute. The auditor, however, held that there was a bequest over in the event of Frank dying without issue living at the time of his death, and directed the executors to pay the legacy to him "upon his giving security in such sum and form as in the judgment of the Orphans' Court shall sufficiently secure the interests of the persons entitled thereto upon the event of the said Frank Fitzwater dying without leaving 'issue' living at the time of his death."

The exceptions filed on behalf of Frank were dismissed by the court, Ross, P. J., in the following opinion :

" It is clear that the proviso as to Frank was intended by the testator, in the event of Jacob's, his father's, death, to place Frank precisely where Jacob was placed by the will. The same trust thrown around the father was, by the proviso, cast about the son. What governed the testator ? It is forbidden to guess. There are no facts proven by the will that cast any light. But Jacob's only son was Frank. If Frank was allowed to take absolutely under the will, and died intestate, leaving no issue living at the time of his death, all his (Frank's) heirs, under the intestate laws, both in the Fitzwater and maternal line could have inherited. This consideration appears to have reached and aroused the testator at the close, and just before the proviso was added. By the general bequest he had given Frank an absolute interest in the fifth, bequeathed to his father. He knew this, for he says, ' if Frank should die without issue, then I order and direct that the money coming to him out of my estate, at the death of his father, *as hereinbefore provided*, shall, &c.' Can anything indicate more clearly a purpose first formed and then changed by the new idea? Can it be doubted that a competent testator grappling with testamentary ideas, may not modify a former by a later clause in his will ?

" Surely he may do this with or without giving his reason. But this old man has shown the cause of the after-thought. He wanted his money, if Frank had no children, to be kept in the line of his own blood. This does not depend upon fancy or conjecture. The testator goes on to say that in the event of his death childless, the fund shall go to his uncles and aunt, on his father's side, or their

issue. What can be stronger? There is an expressed intention; and the cause of that intention, as well as the reason for the intention in the original idea, are given in a way that forbids mistake. The will is clear, the intention is obvious. No rule of law forbids it being thus construed. Frank, upon his father's death, takes his place in his rank· as a cestui que trust. His children, under the proviso, occupy his original situation. These exceptions are dismissed, but it is clear that the decree as to Frank's interest must be remodeled. The rights of his issue must be regarded. And now report recommitted to the auditor to be reformed in conformity with this opinion."

The auditor then appended to his decree, " In the event of the said Frank Fitzwater being unable or unwilling to give said security, then the principal sum shall remain in the hands of Harvey Shaw, Benjamin E. Chain and George W. Fitzwater, in trust, to pay the income and interest arising therefrom annually to the said Frank Fitzwater during his life, and at the death of the said Frank Fitzwater, to pay the principal sum to such issue as the said Frank Fitzwater shall have living at the time of his death; and in the event of his dying without issue, then to pay the same to the parties entitled thereto under the will."

Exceptions, thereto having been dismissed, Frank Fitzwater took this appeal, and alleged that the court erred in making this decree.

*Joseph Leedom* and *H. K. Weand,* for appellant.—Words in a will which create an absolute estate, are not to be limited by subsequent words unless the intention is clear: Shutt *v.* Rambo, 7 P. F. Smith 149. Words which in a devise of real estate create an estate tail in a bequest of personalty create an absolute estate: Potts's Appeal, 6 Casey 168; Wharton *v.* Shaw, 3 W. & S. 124; Amelia Smith's Estate, 11 Harris 9; Yarnell's Appeal, 20 P. F. Smith 341. If the testator had intended to provide for the issue of Frank, he would have used the words " child or children," as in other parts of the will, or he would have said that Frank, upon his father's death, should only receive the interest or income. He seems to have contemplated but one contingency, and that was that Jacob and Frank might both be dead, leaving no issue at the death of the testator, in which event he did not desire any part of the bequest to descend to the maternal relations of Frank. His failure to provide trustees, his silence as to when it should vest in the issue of Frank, all tend to show that the view advanced here is correct.

Where the gift over is in the event of " dying without issue, &c.," the death will be construed, not to mean a death generally at some time or other, but in the testator's lifetime: Smith on Executory Devises, 347, 351; Clayton *v.* Lowe, 5 B. & Ad. 636;

Schoonmaker *v.* Stockton, 1 Wright 461; Karker's Appeal, 10 P. F. Smith 141; Amelia Smith's Appeal, 11 Harris 9; Mengel's Appeal, 11 P. F. Smith 248; Mast's Appeal, 2 W. N. C. 404; Bentley *v.* Kauffman, 5 Norris 99; Biddle's Appeal, 19 P. F. Smith 190; Umstead's Appeal, 10 Id. 365. The recent decision in Mickley's Appeal, 11 Norris 514, rules this case.

*B. E. Chain,* for appellees.—If, as contended by the appellant, the testator intended that this legacy should vest absolutely in the legatee at the father's death, we may inquire why make this exception or proviso? Without it the legacy would vest as contended for, and the proviso would be without meaning. But it is there, and we must presume it is there for a purpose. The purpose is obvious when we look at the whole will. Frank was the only child of Jacob. Should he die without leaving children, his mother, or the maternal relations, might take, and such a result would not comport with his idea of keeping his estate in the line of his own family. In cases of this kind, where there is a bequest of a life estate or interest followed by the words " dying without issue," and the appointment of a trustee to effectuate this intention, a life interest has been thought to follow inevitably. Such is the conclusion mentioned by the late Chief Justice THOMPSON in Mengel's Appeal, 11 P. F. Smith 250. See Emma Myers's Appeal, 13 Wright 111.

Mr. Justice TRUNKEY delivered the opinion of the court, May 3d 1880.

Jacob Fitzwater bequeathed one-fifth of the residue of his estate to his niece, and a like portion to each of his four nephews, except Jacob whose share is reduced $1000 with direction that said sum be paid to Frank. He directed that the shares of John, Charles and Jacob, shall remain in the hands of his executors in trust; that they pay to them the income and interest during their lives, and at the death of either to pay the share of such deceased unto his children should he leave any surviving, but if no child survives then to pay said share to his surviving brothers and sister, and to the issue of any that may be dead, such issue to take the parent's share; "and provided further that should the said Frank Fitzwater, son of my nephew, Jacob Fitzwater, die without issue, then I order and direct that the money coming to him out of my estate at the death of his father, as hereinbefore provided, shall go to his uncles and aunt on his father's side, or if any of them be dead then to their issue, such issue taking their parent's share."

Jacob died, after the testator's death, leaving an only child, said Frank, surviving. Frank claims that his father's share is now absolutely vested in him, and, had not the auditor and learned judge of the Orphans' Court held otherwise, we should unhesitat-

[Fitzwater's Appeal.]

ingly conclude that his demand is well founded.   The five bequests first are made without condition.   Then follows the trust provision for three of the legatees with direction that at the death of each his share shall be paid to his children if any survive.   It is by virtue of this part of the will that the children of John, or Charles, or Jacob, become entitled to the principal sum; and it is this which entitles Frank to any portion of the testator's estate.   He takes precisely the same interest as is given to the children of John and Charles; and had Jacob left other children they all would have shared equally.   If Frank were not the sole surviving child, the proviso would apply to the fraction he would then receive just as it now does to the whole.   It declares that should Frank die without issue, the money coming to him, "as hereinbefore provided," that is as the child of Jacob, shall go to his uncles and aunt on his father's side.   Should he die leaving issue there is no bequest over to any one, not even to his issue or children.   The executors are ordered to pay the money at Jacob's death to his child—they are not authorized to hold it longer in trust.   Jacob had right to the income of the money for life, at his death Frank takes the money itself.   That is the difference, and, whatever the proviso really means, it is clear that it does not cast about the son the same trust as was thrown around the father.

Where the intendment of the will is doubtful, the law leans in favor of an absolute estate; of the primary, rather than the secondary intent; of the first taker as the primary object of the testator's bounty; and of a distribution conformable to the general rules of inheritance.   The legacy to Frank is absolute, he is the first taker of the principal, the bequest over is in case of his death without issue.   If it be inferred from the whole that the bequest is to Frank and his issue he takes the money absolutely: Amelia Smith's Appeal, 11 Harris 9.

The bequest is to Jacob for his life, then to his child, and in case of the latter's death without issue to his paternal uncles and aunt. Strictly, this is within the rule given in Williams on Ex'rs 1261: "If there is a bequest to one for life, and after his decease to A., and in case of A.'s death to B., the contingency is held referable to the lifetime of the first legatee; and the bequest over takes effect in case A. dies during the continuance of the life estate; he takes absolutely, if he survives the tenant for life.   And the rule is the same if there is a bequest to one for life, and after his decease to A., and in case of A.'s death without children to B."   See Mickley's Appeal, 11 Norris 514.

Most general rules cease to be applicable where it appears, from the whole will, that their application would frustrate the intention of the testator.   This will carries clear expression of intention to give the entire property to two of the legatees; a life use to three of them, and the principal to their children with bequest over if

they leave no children.   A condition is appended to the bequest to one of these children that if he die without issue it shall go over.   This omits the trust for those who were to take the income for life, omits to direct payment of the principal to his children, and, even if here issue means children, it does not direct payment to his issue.   If inference is warranted it is that the principal is given to Frank and his issue.   Upon the whole we think it was not the testator's intention to give a mere life use to Frank, and that, under the rules of construction, he is entitled to the money.

> Decree reversed, and it is now considered and decreed that the executors pay the share or legacy of Jacob Fitzwater, less the costs, to his son Frank Fitzwater, the same being $7112.20.   Costs of this appeal to be paid by the appellees out of the fund in their hands.