## Wildemore's Estate.

*Wills — Construction — Gift over — Without issue—"Immediate"—Words and phrases.*

1. Where an absolute estate is devised, followed by a gift over in the event of the donee dying without issue, such words will be construed as referring to death without issue in the lifetime of the testator if the gift is immediate, or during continuance of the life estate if the gift is not immediate.

2. By the word "immediate" is meant a case where possession takes place immediately on the death of the testator; a gift is not immediate when possession is postponed to an intermediate estate.

3. Where testator gives his estate to his wife for life, and at her death to his children absolutely, and then directs that, if "either" of his children die without leaving issue, "then it is my wish that the said share or shares be divided equally between the survivor or survivors, but should there be a lawful heir or issue to the one so dying, the said heir or issue are to take the said share absolutely according to law," and it appears that one of the children died in the lifetime of the widow leaving issue, the issue, and not the personal representatives of the deceased child, take the child's share.

4. In such case, the word "wish" as used in the will is not precatory.

Exceptions to adjudication. O. C. Phila. Co., April T., 1911, No. 731.

LAMORELLE, P. J., Auditing Judge.—Jacob Wildemore died Dec. 13, 1906, having first made a will, dated May 16, 1901, of which he appointed his wife, Mary Ann Wildemore, and his daughter, Caroline W. Wildemore, executrices, to whom letters testamentary were granted Dec. 20, 1906.

After directing the payment of his just debts and funeral expenses, testator bequeathed unto his wife, Mary Ann Wildemore, so long as she remained his widow, all the income from his real estate and personal estate, she, however, to pay all taxes and water rents and to keep the real estate in good repair,

and at her death or remarriage he provided as follows: "I give, devise and bequeath unto my children to wit Frank Wildemore, Caroline W. Wildemore, Horace Wildemore and John Wildemore, all and every my real and personal estate in equal shares absolutely; but should either of my said children die without leaving a lawful heir or issue then it is my wish that the said share or shares be divided equally between the survivor or survivors, but should there be a lawful heir or issue of the one so dying the said heir or issue are to take the said share absolutely according to law."

Mary Ann Wildemore, the widow, died Jan. 16, 1927.

Horace Wildemore, one of the sons, died Jan. 27, 1924, leaving to survive him two children, Elizabeth F. Mungan, who is of age, and Horace Wildemore, Jr., who is a minor, and of whose estate John K. Wildemore has been appointed guardian by the Orphans' Court of this county.

The question to be determined is whether the children of Horace Wildemore are entitled in fee simple or absolutely to a one-fourth share of the estate, or whether the personal representatives of said Horace Wildemore take a one-fourth share of the personal estate and his heirs or devisees, as the case may be, take a one-fourth share of the proceeds of real estate sold in proceedings under the Price Act, and which proceeds are embraced in this account.

Testator, after directing that his widow should have the right to enjoy the estate during widowhood, provided as follows: "At her death or remarriage I give devise and bequeath unto my children," naming them, ". . . my real and personal estate in equal shares absolutely." In form, the gift is made "at her death or remarriage," but it has uniformly been held, in cases where similar language was employed, that the intent was to vest the title at the death of testator, but to postpone the enjoyment or possession until the termination of the particular estate. This being so, we come to the question of what is the proper construction to be placed upon the language beginning with the word "but" after the semi-colon and ending with the words "according to law."

He says, "but should either of my said children die without leaving a lawful heir or issue," but does not fix the time of death. He may have meant death occurring in his own lifetime, death occurring during the continuance of the particular estate, or even death after the termination of the particular estate.

The Auditing Judge is of opinion that testator was not referring to the death of a child in his own lifetime. As was said by Ashman, J., in Breese's Estate, 2 Dist. R. 364: "A testator rarely anticipates the death of a legatee or devisee before his own; and it will not be adopted when, by reason of any provision in the will, another period can be taken as the period of death. When, therefore, a gift of a particular interest in the same property precedes the gift to the person of whom the death is predicated, that event will be construed to mean a death in the lifetime of the particular estate."

The Auditing Judge is further of opinion that testator did not refer to the death of a child after the termination of the particular estate. Such a construction would, in effect, reduce the fee simple estate previously given to each of the children to a life estate, with cross-remainders, and is, therefore, not to be adopted.

In the opinion of the Auditing Judge, it was the intention of testator to provide for the contingency of a child dying during the continuance of the particular estate. He apparently realized that strangers to the blood might become entitled to the enjoyment of the property after the termination of the particular estate, unless he provided for the contingency of a child dying "without leaving a lawful heir or issue" during the continuance of the par-

ticular estate; and it is not unreasonable to assume the language beginning with the word "but" was intended to prevent strangers to the blood getting any interest in the estate during the continuance of the particular estate.

The Auditing Judge is also of opinion that the limitation over upon the death of Horace was not after an indefinite failure of issue, but, in the event of his death, without leaving issue to survive him at the time of his death. This will was made after the passage of the Act of July 9, 1897, P. L. 213, and subsequently incorporated in the Wills Act of June 7, 1917, P. L. 403, which provides that the words "die without issue," or similar expressions, shall, in the absence of a contrary intent, be construed to mean a definite failure of issue. The Rule in Shelley's Case does not, therefore, apply. In Smith v. Piper, 231 Pa. 378, after giving a fee simple estate to two nieces, testator provided, if either "of my said nieces . . . die without lawful issue," the fee should go to others. It was held that the words "die without lawful issue" must, in view of said act, be interpreted to mean a failure of issue in the lifetime of the nieces.

In other words, the Auditing Judge is of opinion that the testator gave each of his children a fee simple estate, defeasible, however, upon his or her death during the continuance of the particular estate. Horace having died in the time specified, the limitation in favor of his children took effect.

The cases cited by counsel for the widow of Horace Wildemore are not in point. In Bair's Estate, 255 Pa. 169, after giving his entire estate to his wife, testator directed that at her death it should go to his children, "Christian, George, Peter, Ludwig, Elizabeth and Charlotte, or the survivor of them, or to the legal representatives of such as are dead, if any of them should die before my wife's second marriage or death, share and share alike." It was held that the word "or" should be read as "and," and that the language "or to the legal representatives of such as are dead" so read were words of limitation. In other words, that it was a limitation to a child for life with remainder at her death to her heirs. The time when the death should occur was clearly designated, in which respect it differs from the instant case, and, as already pointed out, the Rule in Shelley's Case is not applicable in the instant case.

In Jenning's Estate, 266 Pa. 60, testator gave his estate to his wife for life and at her death to his three children, share and share alike, and, "in the event of the death of any of the said children leaving a child or children, such child or children to take the share of their parent." One of the daughters died unmarried and without issue after the death of her father but in the lifetime of the widow. The contingency provided for on which the estate was to be divested not having happened, the court decided that she died seised of a fee simple estate.

Testator did not marry, nor were any children born, after the execution of the will.

*Joseph H. Grubb, Jr.* (of *Newbourg, Butterworth & Grubb*), for exceptions. *Frederick C. Schaeffer* (of *Powell, Ludlow & Schaeffer*), contra.

VAN DUSEN, J., Dec. 9, 1927.—Testator gave his estate to his widow for life, and at her death or remarriage to his children absolutely; and then proceeded: "But should either of my said children die without leaving a lawful heir or issue then it is my wish that the said share or shares be divided equally between the survivor or survivors, but should there be a lawful heir or issue of the one so dying the said heir or issue are to take the said share absolutely according to law."

One child of testator died in the lifetime of the widow, leaving issue. The Auditing Judge regarded this as performance of the condition, and awarded distribution to the issue of this child. Exceptions were filed asking for distribution to the representatives of this deceased child on the ground that his interest became vested upon surviving the testator.

If the testator had indicated, even by inference, the period during which he contemplated that the death of a child would occur, his wish would be respected. Wills in which this was done are to be found in Stoner *v.* Wunderlich, 198 Pa. 158; Smith *v.* Piper, 231 Pa. 378; Baird's Estate, 255 Pa. 169; Deeter's Estate, 280 Pa. 135, and Kirkpatrick's Estate, 280 Pa. 306. But our testator said nothing which throws any light on that point; we do not know what he intended (and perhaps he did not know himself); and we are forced to rely on a canon of construction. It is thus expressed in Seewald's Estate, 281 Pa. 483: "Where an absolute estate is devised, followed by a gift over in event of the death of the donee without issue, such words will be construed as referring to death without issue in the lifetime of testator if the gift is immediate, or during continuance of the life estate if the gift is not immediate."

By the word "immediate" is meant a case where possession takes place immediately on the death of the testator. Of this class is Seewald's Estate, *supra;* Mickley's Appeal, 92 Pa. 514; Morrison *v.* Truby, 145 Pa. 540; Coles *v.* Ayres, 156 Pa. 197; Neubert *v.* Colwell, 219 Pa. 248; Williamson *v.* Greene Improvement Co., 278 Pa. 358, and Freeman's Estate, 281 Pa. 190. A gift is "not immediate" when possession is postponed to an intermediate estate. Of this class are Fitzwater's Appeal, 94 Pa. 141; McCormick *v.* McElligott, 127 Pa. 230; McAlpin's Estate, 211 Pa. 26; Mayer *v.* Walker, 214 Pa. 440; Patterson *v.* Reed, 260 Pa. 319; Breese's Estate, 2 Dist. R. 364, and the case at bar.

The word "wish" in the first part of the clause quoted above is not precatory, as appears from the positive language of the last part of the clause, if for no other reason.

The exceptions are dismissed and the adjudication is confirmed absolutely.